2008 ME 70

**MIDCOAST COHOUSING LAND ACQUISITION, LLC**

v.

**The RIVERHOUSE TRUST.**

Supreme Judicial Court of Maine.

Argued: Jan. 15, 2008.
Decided: April 29, 2008.

Andrew W. Sparks, Esq. (orally), Benjamin P. Camp, Esq., Drummond & Drummond, LLP, Portland, ME, for Midcoast Cohousing Land Acquisition, LLC.

William L. Plouffe, Esq. (orally), Drummond Woodsum & MacMahon, Portland, ME, for Helen Warren Weld and Robert K. Strachan, Trustees of the Riverhouse Trust.

Panel: SAUFLEY, C.J., and CLIFFORD, ALEXANDER, LEVY, SILVER, MEAD, and GORMAN, JJ.

CLIFFORD, J.

[¶ 1] Midcoast Cohousing Land Acquisition, LLC (Midcoast) appeals a summary judgment entered in the District Court (Wiscasset, *Westcott, A.R.J.*) in favor of Helen Warren Weld and Robert K. Strachan as trustees of the Riverhouse Trust. Midcoast argues that the court erred in concluding that: (1) the doctrine of stranger to the deed does not apply to make unenforceable the restrictive covenant to which Midcoast's property is subject; and (2) the restrictive covenant is enforceable and prevents Midcoast from building condominium units on the property. We agree with the District Court that the stranger to the deed doctrine is inapplicable, but because the restrictive covenant to which the land was subject does not prohibit the development planned by Midcoast, we vacate the judgment.

## I. BACKGROUND

[¶ 2] The parties have stipulated to the following facts. In 1977, Anne W. Weld obtained title to property in Edgecomb, by deed recorded in the Lincoln County Registry of Deeds at Book 923, Page 228. She subsequently deeded a portion of that same property to her daughter Helen Warren Weld, retaining a life estate for herself in that portion of the property. The land Anne deeded to her daughter subject to a life estate for herself is referred to as "Lot A" on a plan entitled "Anne W. Weld Property," dated December 1986, The remaining land is referred to on the plan as "Lot B." Along with retaining a life estate in Lot A, Anne also benefited Lot B by prohibiting further subdivision of Lot A.[1]

[¶ 3] On December 12, 1989, Anne deeded her fee simple interest in Lot B, along with her life estate in Lot A., to Lawrence J. Scahill, as trustee of the Anne W. Weld Nominee Trust. On October 13, 1992, shortly before Anne's death,[2] Scahill, acting as trustee, conveyed Lot B to Kathleen A. Golob–Jones and George N. Jones. The deed contained the following language:

Grantees by acceptance of this deed, agree that these premises shall be divided into only two lots, one of which shall be located substantially between the pond and the River Road and shall comply with local land use and minimum lot size ordinances. This covenant shall run with the land and shall be for the benefit of Lot A on said plan.

[¶ 4] On August 28, 2000, Helen Warren Weld conveyed Lot A to herself and Robert K. Strachan, as Trustees of the Riverhouse Trust.

[¶ 5] On August 17, 2004, Kathleen A. Golob–Jones and George N. Jones sold Lot B to Midcoast. The deed contained the same restrictive covenant language as the conveyance to the Joneses stated above, Midcoast Cohousing Community, LLC, an

---

1. The restriction reads as follows:

   said premises are further conveyed subject to the perpetual restriction, for the benefit of the Grantor's remaining land shown on said Plan as Lot B, that said premises shall not be further subdivided, the burdens and the benefits of this restriction to be perpetual and to run with the land of the respective parcels,

2. Anne W. Weld died on October 19, 1992.

option holder on the property from Midcoast, sought subdivision, site plan, and shoreland zoning approval from the Town of Edgecomb to develop Lot B with approximately thirty-one condominium units.

[¶ 6] On April 24, 2006, Midcoast filed a complaint for declaratory judgment pursuant to 14 M.R.S. §§ 5951–5963 (2007) seeking a declaration of the meaning and enforceability of the restrictive covenant in the August 17, 2004, deed for Lot B. Both parties filed motions for summary judgment. The court denied Midcoast's motion for summary judgment and entered summary judgment in favor of the Trustees. The court concluded that the doctrine of stranger to the deed did not apply to make the restriction unenforceable. The court also concluded that the thirty-one condominium development on Lot B as proposed by Midcoast was prohibited by the language of the restrictive covenant. Midcoast filed this appeal.

## II. DISCUSSION

### A. Doctrine of Stranger to the Deed

[¶ 7] When, as in this case, the facts are undisputed, we review the trial court's entry of a summary judgment for errors of law. *Beane v. Me. Ins. Guar. Ass'n*, 2007 ME 40, ¶ 9, 916 A.2d 204, 207.

[¶ 8] Maine case law has recognized the doctrine that a reservation to a stranger, meaning an individual who is not a party to the transaction, cannot by its own force pass rights to the stranger. *See Anchors v. Manter*, 1998 ME 152, ¶ 7, 714 A.2d 134, 137; *Tripp v. Huff*, 606 A.2d 792, 793 (Me.1992); *Town of Manchester v. Augusta Country Club*, 477 A.2d 1124, 1130–31 (Me.1984); *Fitanides v. Holman*, 310 A.2d 65, 67 (Me.1973). If the stranger to the deed doctrine prevents a restrictive covenant from being enforced, it does so by making the covenant unenforceable at

its creation. Therefore, we must look at the relationship of the parties at the time that the covenant was created. The deed to Lot B in which the covenant was created in this case is the deed from Lawrence Scahill, as trustee of the Anne W. Weld Nominee Trust, to Kathleen Golob–Jones and George Jones, dated October 13, 1992. At the point when Lawrence Scahill sold Lot B to the Joneses with the restrictive covenant that benefited Lot A, he was also the owner of a life estate, in the adjacent Lot A, the life estate being on the life of Anne W. Weld. On October 13, 1992, Anne was still alive. The restrictive covenant, therefore, was not created in favor of a stranger to the deed, but directly benefited a party to the deed.

[¶ 9] It is of no consequence to the application of the doctrine that at the time the restrictive covenant was created, Lawrence Scahill's interest in Lot A was a life estate measured by the life of Anne, and that Anne has since died. The doctrine looks only to the creation of the restrictive covenant to determine whether it was validly created. In this case, the restrictive covenant was validly created. The plain language of the restrictive covenant makes clear that the covenant was created to benefit Lot A, in which Scahill had a life estate interest measured by the life of Anne, was intended to run with the land, and was meant to bind subsequent owners of Lot B. Accordingly, the stranger to the deed doctrine does not apply in this case.

### B. The Language of the Restrictive Covenant

[¶ 10] Because the property is subject to the restrictive covenant we must interpret the covenant's language.

Construction of a deed, including a restrictive covenant, is a question of law that we review de novo. The language

must be given its ordinary meaning, and if there is no ambiguity the plain meaning controls. If the language is ambiguous, then extrinsic evidence may be consulted to ascertain the grantor's intent. Language is deemed ambiguous when it is reasonably susceptible of different interpretations.

*River Dale Ass'n v. Bloss,* 2006 ME 86, ¶ 6, 901 A.2d 809, 811 (quotations marks and citations omitted).[3]

[¶ 11] The restrictive covenant states: Grantees, by acceptance of this deed, agree that these premises shall be divided into only two lots, one of which shall be located substantially between the pond and the River Road and shall comply with local land use and minimum lot ordinances. This covenant shall run with the land and shall be for the benefit of Lot A on said plan.

[¶ 12] Midcoast's plan for Lot B is a condominium community. The plan does not call for a division of the property into more than two lots. Indeed there is only one lot. If the intent of the restrictive covenant was to prohibit the development of condominiums or other multiple unit dwellings, such as an apartment house, the restriction could have so stated. At the time the restriction was created, in 1992, condominiums were commonly used, and were not unknown to those desiring to restrict development. The covenant does not restrict the *use to* which the land can be put; rather the language restricts only the creation of more than two lots. In the context of this deed, the term "lot" is used in its ordinary sense, meaning "[a] tract of land, esp. one having specific boundaries or being used for a given purpose." BLACK'S LAW DICTIONARY 958 (7th ed. 1999); *see also Planning Bd. of Town of Naples v. Michaud,* 444 A.2d 40, 43 (Me.1982).

The meaning of "lot" as used in the deed is apparent given that the provision goes on to describe where the boundaries for one of the lots should be located. Using that definition, a dwelling unit cannot be considered a lot because it is not a "tract of land." Therefore, the covenant does not prohibit Midcoast from proceeding to develop the condominium units as outlined in its plan for Lot B.

The entry is:

Judgment vacated. Remanded to the District Court for entry of a judgment in favor of Midcoast Cohousing Land Acquisition LLC consistent with this opinion.

---

**3.** If the language was ambiguous, we would construe it in favor of the free use of property and against the limitation. *See Naiman v. Bilodeau,* 225 A.2d 758, 759 (Me.1967).