STATE OF MAINE                                    SUPERIOR COURT
                                                  CIVIL ACTION
YORK, ss.                                         DOCKET NO. AP-08-026

                                                  CAP - YOP - 12/11/2009


TODD ZAHARES and
DENISE ZAHARES,

            Plaintiffs


      v.                                          ORDER


TOWN OF OLD ORCHARD BEACH,
et al.,

            Defendants


      The Zahares appeal from the Town of Old Orchard Beach's Planning Board's

decision to deny their application for a revised or new conditional use permit.

Following hearing, the appeal is Denied.

## BACKGROUND

      Todd and Denise Zahares own property in the Cascade Hilands Addition

Subdivision in the Town of Old Orchard Beach. (Pl.'s Compl. ¶¶ 1–2.) The entire

subdivision lies in an R-1 zoning district, defined as a "district in which the principal

use of the land is for single-family residences in detached dwellings and customary

accessory ... uses that contribute to a wholesome residential neighborhood

environment." Old Orchard Beach, Me., Code § 78-486 (Sept. 18, 2001); (R. at 2, 11, 134.)

The ordinance defines "single-family residences" as "detached residence[s] designed

for or occupied by one family only." Old Orchard Beach, Me., Code § 78-1 (Nov. 5,

2003); (R. at 111.) Accessory dwelling units are allowed as conditional uses in the R-1

district, and are defined as "a room or suite of rooms designed and equipped

exclusively for use as living quarters for only one family" that "is contained entirely within the confines of a building which otherwise retains the design and appearance of a detached, single-family dwelling." Old Orchard Beach, Me., Code §§ 78-1, 78-488 (Nov. 5, 2003); (R. at 110–11, 134.)

In 1996 the Zahares obtained a conditional use permit allowing them to construct an accessory dwelling unit in their home to accommodate Todd Zahares' elderly mother. (R. at 1; Zahares' Br. at 1.) The Planning Board issued its approval on April 18, 1996, and placed the following condition on the permit:

> [T]he apartment remains strictly for use as a mother in law/relative apartment not as a rental unit. The conditions of this permit restriction shall remain in effect ad infinitum, unless otherwise permitted by the Planning Board or the Zoning Ordinance.

(R. at 1.) The Zahares did not appeal from the decision, but chose instead to accept the condition and construct the apartment above their garage. (Zahares' Br. at 2–3.)

For twelve years between 1996 and 2008, a succession of the Zahares' family members occupied the apartment. (Zahares' Appeal ¶ 9.) By 2008 the Zahares no longer had relatives interested in renting the unit above their garage. (Id.) At the suggestion of their employer they chose to rent the apartment to a non-relative in violation of the permit restriction (Id. at ¶¶ 10, 11.) The violation was reported, and on May 2, 2008 the Town Code Enforcement Officer (CEO) issued a violation notice and discontinuance order. (R. at 8.)

The notice stated that the Zahares had violated the terms of their conditional use permit by renting the unit to non-family members, and had violated the Town's Business License Ordinance by renting a year-round rental to non-family members without the required business license. See Old Orchard Beach, Me., Code § 78-1266 (Sept. 18, 2001) (violation of condition is violation of ordinance); Code §§ 18-26, 18-28

2

(Oct. 16, 2007) (requiring business license to operate a year-round rental and establishing penalties for violations). The CEO ordered the Zahares to cease renting the apartment to non-family members until they obtained a revised conditional use permit and obtained the necessary business license. (R. at 8.)

On May 13, 2008, the Zahares received a letter from their neighbor, Alice Leveris, requesting that they cease renting the apartment to non-family members. (R. at 9.) The letter claimed that the Zahares' actions had violated certain restrictive deed covenants limiting their property to one, single-family dwelling, for residential and seasonal rental use only. (*Id.*) Leveris indicated that she would bring an action to enforce the covenants in the event the Zahares succeeding in obtaining a new conditional use permit without the family-member condition. (*Id.*)

On May 15, 2008 the Zahares filed a conditional use application with the Planning Board, requesting that the Board remove the condition restricting occupancy of the apartment to family members so that the Zahares could rent the unit to non-relatives. The application came before the Planning Board at a public workshop on June 5, 2008. (R. at 20.) In July 2008 the Planning Board conducted a site-walk around the Zahares' property and held a public hearing on their application. (R. at 21–22, 30–43.) On July 10, 2008 the Planning Board voted 4-1 to deny the application, and on July 24, 2008 the Board adopted its official findings of fact. (R. at 150–52.)

The Planning Board found that the 1996 decision to grant the Zahares' initial conditional use permit was final because it was never appealed, and could not be reopened or reexamined in 2008. (R. at 150.) As a result the Planning Board determined that it had to consider the Zahares' current application to remove the 1996 condition in light of the Town's 2008 zoning ordinance governing conditional uses. (*See* R. at 151.) The Board found that the Zahares' only purpose for seeking to remove the condition

was that they no longer had relatives interested in renting their apartment. (R. at 150.) The Board found this reason insufficient to justify "removing the condition which the [Zahares'] accepted when they received their conditional use approval ... in 1996." (R. at 151.)

Additionally, the Planning Board found that the Zahares' accessory unit did not meet the current zoning requirements for an accessory dwelling unit and would not receive approval if applied for in 2008. (R. at 151.) The Board found as fact that the Zahares' accessory apartment is not accessible through the Zahares' main residence as required by §§ 78-1272(1) and (4) of the zoning ordinance, but is instead reached through a separate breezeway. Old Orchard Beach, Me., Code §§ 78-1272(1), (2) (Sept. 18, 2001); (R. at 149, 151.) The Board also found that the requirements of §§ 78-1272(1) and (4) exist to further § 78-1272's stated purpose of "protecting the single-family character of residential neighborhoods." Old Orchard Beach, Me., Code § 78-1272; (R. at 149, 151.) The Board determined that the 1996 permit condition furthered the same purpose in this case, so that removal of the condition "would be contrary to the goals and purposes of [§] 78-1272." (R. at 151.)

The Zahares filed this appeal pursuant to Rule 80B on August 6, 2008, naming the Town of Old Orchard Beach as appellee and Alice Leveris as party-in-interest. On August 18, 2008 Leveris filed a counterclaim to enforce the deed covenants against the Zahares. A flurry of miscellaneous motions followed. Action on all outstanding motions and on Leveris' counterclaim has been stayed pending the resolution of this 80B appeal.

## DISCUSSION

The Zahares first attack the validity of the 1996 Planning Board's decision. They reason that if the condition was an invalid exercise of the Board's power in 1996, it should have no legal effect today. However, this argument must fail, as any attempt to

4

revisit the propriety of the 1996 decision twelve years after-the-fact is barred by both the zoning law's appeal procedures and the six-year statute of limitations on civil actions.

"[S]trict compliance with the appeal procedure of an ordinance is necessary" so that parties can efficiently rely on the finality of municipal decisions. *Juliano v. Town of Poland*, 1999 ME 42, ¶ 7, 725 A.2d 545, 548 (quoting *Wright v. Town of Kennebunkport*, 1998 ME 184, ¶ 8, 715 A.2d 162, 165) (quotations omitted); *see Upjohn Co. v. Zoning Board of Appeals*, 616 A.2d 793, 796 (Conn. 1992) (failure to challenge conditions by appeal at time of issue precluded attempt to do so three years later). Even the illegality of a decision to grant a permit will not toll the appeal period. *Wright*, 1998 ME 184, ¶ 7, 715 A.2d at 165; *see McBreairty v. Town of Greenville*, 2000 Me. Super LEXIS 135, * 7 (June 14, 2000) (planning board's unappealed decision became final when appeal period ran, and applicant could not later challenge planning board's power to impose a certain condition). Old Orchard Beach's zoning ordinance states that decisions on conditional use permits may be appealed pursuant to Rule 80B, which in turn sets an appeal period of thirty days. Old Orchard Beach, Me., Code § 78-1239 (Sept. 18, 2001); M.R. Civ. P. 80B(b). The Planning Board granted the Zaharas' conditional use application and imposed the condition on April 18, 1996, and the Zaharas did not question the condition's legality until August 6, 2008. Their challenge comes twelve years too late.

The Zahares' attack on the 1996 decision is likewise barred by the six-year statute of limitations. Municipal zoning decisions are subject to a six-year statute of limitations that begins to run when a cause of action accrues. *Bog Lake Co. v. Town of Northfield*, 2008 ME 37, ¶ 8, 942 A.2d 700, 703–04 (citing 14 M.R.S.A. § 752 (2007)). Any potential illegality or harm in the condition limiting occupancy of the Zahares' accessory unit to family members was readily apparent in 1996 when it was imposed. The Zahares could have foreseen that one day they would not have relatives interested in or capable of

renting the unit. The Zahares nevertheless accepted the condition without complaint for twelve years. Now that the Zahares have "run out of relatives interested in living in the second floor accessory dwelling as tenants," they would like to challenge the validity of the condition. (Zahares Appeal ¶ 9.) The statute of limitations has run, barring their challenge.

Since the Zahares cannot challenge the validity of the of the Planning Board's 1996 decision, the only question before the Court is whether the Planning Board correctly denied the Zahares' application in 2008. When the Court reviews municipal action pursuant to Rule 80B, it examines the record before the municipal body "to determine if it abused its discretion, committed an error of law, or made findings not supported by substantial evidence." *Mills v. Town of Eliot*, 2008 ME 134, ¶ 5, 955 A.2d 258, 261. This Court may not substitute its own "judgment for that of the Board." *York v. Town of Ogunquit*, 2001 ME 53, ¶ 6, 769 A.2d 172, 175. The Zahares' bear the burden of showing that the evidence on the record compels a conclusion different from that reached by the Planning Board. *Twigg v. Town of Kennebunk*, 662 A.2d 914, 916 (Me. 1995). "The Board's decision is not wrong because the record is inconsistent or a different conclusion could be drawn from it." *Id.*

The Zahares argue that Planning Board's decision to deny their 2008 application was arbitrary or was a misapplication of the law. Alternatively, the Zahares' claim that they have a right to have the 1996 condition removed due to changed circumstances, and that its continued maintenance constitutes an unreasonable direct restraint on alienation.

The Town of Old Orchard Beach's zoning ordinance specifies the procedural and substantive requirements necessary to obtain a conditional use permit. Old Orchard Beach, Me., Code §§ 78-1238 to 78-1240, 78-1266, 78-1272 (Sept. 18, 2001). A permit

6

application is filed with the Planning Board, which issues a decision after a public hearing and site walk. § 78-1238. If the decision is not appealed to the superior court within thirty days, it becomes final. § 78-1239; M.R. Civ. P. 80B(b); *Juliano*, 1999 ME 42, ¶ 7, 725 A.2d at 548.

In this case the Zahares filed an application for a conditional use permit in 2008, but rather than request a new permit they framed the application as a request to have the condition placed on their 1996 permit removed. (R. at 11–19.) In essence, the Zahares' 2008 application is an attempt to reopen or reconsider their 1996 application long after the time for appeal has passed. There is no specified procedure addressing this sort of application because it is foreclosed by the finality of the 1996 decision. Absent extraordinary circumstances, the Planning Board's 1996 decision became final when it was not appealed. *Juliano*, 1999 ME 42, ¶ 7, 725 A.2d at 548; *see Upjohn*, 616 A.2d at 797 (recognizing potential for exceptional circumstances justifying removal of unchallenged, unreasonable condition).

The Zahares claim that their 1996 permit gives them a special right to petition for the condition's removal via the following language:

> The conditions of this permit restriction shall remain in effect ad infinitum, unless otherwise permitted by the Planning Board or the Zoning Ordinance.

(R. at 1.) They read "unless otherwise permitted" as placing them outside the normal procedural boundaries, giving them something akin to a contractual right to reconsideration. This interpretation stretches the language too far. The quoted sentence merely states the obvious, i.e. that the Town is not bound by the permit restriction. At most, it is an invitation to apply for a new conditional use permit at a future date. The Planning Board correctly treated the Zahares' 2008 application as an application for a new conditional use permit.

7

The Planning Board found that the Zahares' application did not meet the current requirements for a conditional use permit. (R. at 151, ¶¶ 10–11.) Based on their personal observations made during the site walk, a majority of the Board's members found that the Zahares' accessory unit is not "accessed via the living area of the primary structure" and is not "part of the main residence" as required by §§ 78-1272(1) and (4) of the zoning ordinance. (R. at 151.) The requirements set forth in § 78-1272 are mandatory, and the Zahares' failure to meet them constituted an adequate basis for the Planning Board to deny their application.

The Planning Board also found that the "1996 condition of approval limiting occupancy of the accessory unit to family members" furthered § 78-1272's goal of "protecting the single-family character" of the Zahares' neighborhood. Assuming that it had the power to do so, the Board refused to remove the condition in part because doing so would be contrary to the goals of § 78-1272.

When confronted with an application for a conditional use permit, the Planning Board is empowered to impose "such conditions [on a permit] as it finds necessary to ensure compliance" with all applicable requirements of the zoning ordinance. Old Orchard Beach, Me., Code § 78-1266 (Sept. 18, 2001). Section 78-1272 requires that accessory dwelling units not impair "the single-family character of residential neighborhoods." Old Orchard Beach, Me., Code § 78-1272 (Sept. 18, 2001). The ordinance also limits uses in an R-1 zoning district to single-family dwellings and customarily incidental accessory uses. Old Orchard Beach, Me., Code § 78-487 (Sept. 18, 2001). A single-family dwelling is defined as a residence "occupied by one family only." Old Orchard Beach, Me., Code § 78-1 (Nov. 5, 2003).

The record shows that the Zahares' home is located in an R-1 zoning district, in a subdivision made up of detached single-family homes. The Planning Board could

reasonably find that the condition limiting occupancy of the Zahares' accessory unit to family members was necessary to maintain the single-family character of the Zahares' neighborhood. This finding is consistent with the applicable zoning law requirements and was not arbitrary, capricious, or otherwise an abuse of discretion.

Finding no error in the Planning Board's handling of the Zahares' application, the Court must address the Zahares' claim that the continued restriction on the occupancy of their accessory unit is an unreasonable restraint contrary to public policy. For support the Zahares cite to *Gangemi v. Town of Fairfield*, 763 A.2d 1011 (Conn. 2001). In *Gangemi*, the homeowners' property had been subject to zoning restrictions that prohibited year-round use and limited occupancy to four or fewer unrelated individuals. *Id.* at 1014. In 1986 the homeowners applied for a variance allowing them to upgrade the dwelling on the property and use it year-round. *Id.* at 1013. The Town granted the variance subject to the conditions that the property not be rented and be used for family purposes only. *Id.* The homeowners did not challenge these conditions. *Id.*

By 1996 the zoning restrictions on the homeowners' property had changed to allow year-round use as a matter of right, rendering the primary benefit conferred by the variance moot. *Id.* at 1014, 1016. While the homeowners remained bound they the conditions of their variance, their neighbors were free to use their property year-round and rent to any group of four or fewer unrelated individuals. *Id.* at 1016. This gave "those other property owners a grossly unfair advantage over the [homeowners] in the marketplace." *Id.* The zoning change also had the effect of transforming a prohibition on seasonal rentals only into "a total loss of the right to rent." *Id.* Given these changed circumstances, the court found that the variance conditions no longer served a "legal

and useful purpose" and their continuation violated the public policy against "the free and unrestricted alienability of property." *Id.* at 1015, 1018.

The Zahares analogize themselves to the homeowners in *Gangemi* and claim that their inability to find relatives interested in renting their accessory unit constitutes a change in circumstance making the continuation of their permit restriction void against public policy. This argument must fail. First, in *Gangemi* the parties could not reasonably foresee in 1986 that the applicable zoning law would change to allow the sought-after use. In this case, when the Zahares applied for and obtained their conditional use permit in 1996 it was entirely foreseeable that they would someday "run out of relatives" interested in living above their garage.

Second, the fact that the Zahares cannot find an eligible tenant for their accessory unit does not place them at an economic disadvantage vis-à-vis their neighbors. On the contrary, it returns them to the status quo of owning a single-family home that may be sold or rented as a single living unit. Nothing prevents the Zahares from altering their accessory unit to conform to the current standards and applying for a new conditional use permit allowing them to rent the unit commercially to non-family members.

Finally, given that the Zahares continue to enjoy the same right to rent their entire home as is held by their neighbors, the permit condition limiting occupancy of the accessory unit to family members is not an unreasonable restraint on the use and alienability of the Zahares' property. The condition continues to serve the legal and useful purpose of protecting the single-family character of the Zahares' neighborhood. Contrary to their present position this appears to be a case where the Zahares are "asking for a change in a bargain they freely made, but now regret after receiving its benefits." (Zahares' Br. at 15.)

10

## CONCLUSION

For the reasons stated above, the decision of the Old Orchard Beach Planning Board is Affirmed.

Dated: _____12/1/09_____

_____
G. Arthur Brennan
Justice, Superior Court

11

STATE OF MAINE                                            SUPERIOR COURT
                                                            CIVIL ACTION
YORK, ss.                                             DOCKET NO. AP-08-026

                                            GAB - YOR - 3/14, 2011

TODD ZAHARES and
DENISE ZAHARES,

            Plaintiffs

      v.                                            ORDER

TOWN OF OLD ORCHARD BEACH,
et al.,

            Defendants

      Counterclaim-defendants Todd and Denise Zahares move for summary

judgment against counterclaim-plaintiff Alice Leveris. Ms. Leveris requests judgment in

her own favor.

                              BACKGROUND

      Todd and Denise Zahares own property in the Cascade Hilands Addition

Subdivision in the Town of Old Orchard Beach. Alice Leveris owns property adjacent to

the Zahares' in that same subdivision. The parties' deeds are subject to covenants and

deed restrictions that state in pertinent part:

      3. These lots shall be known and described as residential lots and shall not be
      used except for residential purposes, except seasonal rentals. No structures
      shall be erected . . . or permitted to remain on any residential building lot
      other than one detached, single-family dwelling, not to exceed two and one-
      half . . . stories in height and a private garage for not more than two . . . cars
      . . . .

      4. No dwelling shall be permitted on any lot at a cost of less than $5,000.00,
      based upon cost levels prevailing on the date these covenants are recorded
      . . . . The ground floor area of the main structure, exclusive of one-story open

porches and garages, shall not be less than 625 square feet for a one-story dwelling, no less than 550 square feet for a dwelling of more than one-story.

In 1996 the Zahares obtained a conditional use permit allowing them to construct an accessory dwelling unit in their home to accommodate Todd Zahares' mother. The permit contained a condition limiting occupancy of the unit to members of the Zahares' family. The unit was built above the Zahares' attached garage and Todd's mother lived there until her death. Other family members lived there until 2008, when the Zahares found that they had no more relatives interested in occupying the unit. At that time the Zahares decided to rent the unit to a non-family member.

Neighbors became aware that a non-family member was residing in the dwelling unit over the Zahares' garage and notified the Town. The Town's Code Enforcement Officer notified the Zahares that they were in violation of their conditional use permit and had to cease renting the unit to non-family members until the Town Planning Board removed the condition. On May 15, 2008, the Zahares applied to the Planning Board to have the condition removed. The Planning Board denied their application on July 24, 2008.

The Zahares filed an 80B appeal of the Planning Board's decision on August 6, 2008, naming both the Town of Old Orchard Beach and Ms. Leveris as respondents. Ms. Leveris filed her counterclaim on August 18, 2008. At the time the counterclaim was filed, the Zahares admitted that they had been "renting an apartment over their garage to a non-relative on a permanent, non-seasonal basis." This court denied the Zahares' 80B appeal on December 1, 2009. They now move for summary judgment against Ms. Leveris in her counterclaim.

2

# DISCUSSION

The material facts in this case are not in dispute, so summary judgment is appropriate if either party is entitled to judgment as a matter of law. M.R. Civ. P. 56(c). This is a contest over the interpretation and application of the restrictive covenants in the parties' deeds. Ms. Leveris argues that the Zahares have transformed their single-family home into a multi-family dwelling by renting the apartment over their garage to a non-family member on a permanent basis. She claims that this violates both the covenant against erecting a building other than a detached single-family dwelling, and the covenant against non-residential uses other than renting on a seasonal basis. Ms. Leveris requests that the Zahares be enjoined from renting the apartment, be declared in violation of the covenants, and be found in breach of the deed contract.

The Zahares argue that restrictions on the use and alienability of their land should be construed narrowly, and they focus primarily on the rental provision of the covenants. They claim that the covenants do not prohibit non-seasonal rentals, but that if the covenants did it would amount to an unreasonable restraint on the use or alienation of their property.

Construction of a restrictive deed covenant is a question of law. *Midcoast Cohousing Land Acquisition, LLC v. Riverhouse Trust*, 2008 ME 70, ¶ 10, 946 A.2d 421, 423–24 (quoting *River Dale Ass'n v. Bloss*, 2006 ME 86, ¶ 6, 901 A.2d 809, 811). Words must be given their "ordinary meaning, and if there is no ambiguity the plain meaning controls." *Id.* (quoting *River Dale Ass'n*, 2006 ME 86, ¶ 10, 901 A.2d at 811). If the language is ambiguous, it will be construed "in favor of the free use of property and against the limitation." *Midcoast Cohousing*, 2008 ME 70, ¶ 10 n.3, 946 A.2d at 424 n.3 (citing *Naiman v. Bilodeau*, 225 A.2d 758, 759 (Me. 1967)).

3

The Zahares' deed prohibits the creation of any structure other than a "detached, single family dwelling" on their lot, and prohibits all uses except "seasonal rentals" and residential uses. The first question is whether the term "single family dwelling" connotes a use restriction or is merely a building restriction. *See ALC Development Corp. v. Walker*, 2002 MW 11, ¶¶ 3, 12, 787 A.2d 770, 772, 774–75. The Zahares argue that their deed's prohibition on the creation of structures other than a single-family dwelling is purely an architectural restriction that does not affect how they can use their property. By this argument, they can create as many single-family dwelling units as they like in their home so long as the structure looks like a single-family home from the exterior.

The phrase "single family dwelling" as it is used in a deed covenant is not new to Maine. A covenant similar to the one in the Zahares' deed was implicated in *Boehner v. Briggs*, 528 A.2d 451 (Me. 1987). There, the landowner's deed prohibited him from erecting "more than a one family dwelling on the" premises. *Id.* at 452. When the landowner purchased the property, it was occupied by a small, single-story house. *Id.* The landowner constructed a freestanding, two-story structure next to the existing house. *Id.* The new structure had separate walls, windows, doors, a roof, a workshop, a living area, two bedrooms, and was connected the original house by an outdoor wooden deck. *Id.* The landowner planned to install a bathroom in the new structure, but was interrupted when the original grantor brought suit for breach of the deed covenants. *Id.*

On appeal, the original grantor argued that the covenant against the erection of "more than a one family dwelling" precluded the construction of multiple structures, i.e. was an architectural restriction. *Id.* at 453. The Court rejected this interpretation of the covenant, finding that the deed did "not restrict, limit, or control in any way the architectural design of 'a one family dwelling.'" *Id.* The new structure did not have the

kitchen facilities or full bathroom necessary to "support a separate family," and there was no evidence that the landowner intended for the structure to house anyone outside of his immediate family. *Id.* The new construction therefore did not violate the prohibition against more than one single-family dwelling. *Id.* In so holding, the Court implicitly recognized that the phrase "one family dwelling" carried an inherent use restriction.

The phrase appeared before the Law Court again in the 1999 case of *Bennett v. Tracey*, 1999 ME 165, 740 A.2d 571. In *Bennett*, the landowner's deed contained the following covenant:

> The premises shall be used only for the purpose of erecting one single family residence of at least 1400 square feet of living area and outbuildings appropriate to the residence. . . . All buildings shall be built utilizing colonial architectural design and shall be approved by Grantors.

*Id.* ¶ 2, 740 A.2d at 572.

Before purchasing the property, the landowner received the grantor's permission to build a commercial woodworking shop attached to the residence. *Id.* ¶ 3, 740 A.2d at 572. After the closing, neighboring residents brought an action to prevent construction of the workshop on the grounds that it was a commercial use prohibited by the deed covenant. *Id.* ¶¶ 4–5, 740 A.2d at 572–73. The landowner argued "that the restriction limiting the use of the property 'only for the purpose of erecting one single family residence'" was ambiguous. *Id.* ¶ 9, 740 A.2d at 573. When the deed was read as a whole, the landowner claimed that the "restriction only govern[ed] the structural basis of construction on the property rather than the later use of that property." *Id.*

The Law Court rejected this line of reasoning, stating that it "would mean that a factory could be located on [the property] so long as the building was 1400 square feet and in a colonial architectural style." *Id.* ¶ 10, 740 A.2d at 573. Interpreting the covenant

5

as an architectural restriction would "remove[] all meaning from the phrase 'single family residence.' If the parties had intended a structural restriction, the phrase 'single family residence' would have no purpose other than to frustrate that intent." *Id.* (citing *Leavitt v. Davis*, 153 Me. 279, 281–82, 136 A.2d 535, 537 (1957)). The covenant unambiguously precluded the landowner from building and operating a commercial woodworking shop. *Id.* As in *Boehner*, the Court recognized that the term "single family residence" implies a restriction on use rather than architecture.

In 2002 the Court provided additional nuance to its interpretation of the term in *ALC Development Corp. v. Walker*, 2002 ME 11, 787 A.2d 770. ALC Development was the developer of a fifty-seven lot subdivision. *Id.* ¶ 1, 787 A.2d at 772. The following restrictions were imposed on all lots:

> 1. Residential Use. No lot shall be improved or used except for single family residential purposes, with no more than one principal residence
> . . . .
>
> 2. Structures. No other buildings or structures of any nature or description shall be erected or maintained . . . [except] a barn, storage shed, cabana, pergola, fence or in-ground swimming pool . . . . Any such building or structure shall be consistent in design and materials with the single family dwelling constructed on the lot.

*Id.* ¶ 3, 787 A.2d at 772–73.

ALC sold all but one of the lots, which it kept for itself. *Id.* ¶ 3, 787 A.2d at 772. ALC later acquired a parcel of land adjacent to its retained lot, on which parcel it intended to build another subdivision. *Id.* ¶ 7, 787 A.2d at 773. It also sought to build a roadway across its retained lot to serve the new subdivision, and it filed an action for judgment declaring that the roadway would not violate the restrictive covenants. *Id.* ¶ 8, 787 A.2d at 773–74. Several landowners answered the complaint and opposed ALC's plan. *Id.* The trial court determined that the proposed road would violate the plain language of the covenants. *Id.* ¶ 11, 787 A.2d at 774.

6

On appeal, ALC cited *Boehner v. Briggs* to argue that the road should be permitted under the restrictive use covenant because it would only be serving new "single-family residences and not multi-family dwellings or commercial structures." *Id.* ¶ 12, 787 A.2d at 774. The Court rejected ALC's reasoning, noting that the restriction in *Boehner* was "a building restriction, not a use restriction," that governed "the type of dwelling" the landowner could erect. *Id.* ¶ 12, 787 A.2d at 774–75. The restriction in ALC's deed, by contrast, governed "the use of the lot in general." *Id.* ¶ 12, 787 A.2d at 775. Using the lot "to access another subdivision" would be "inconsistent with the single-family residential use restriction" ALC had imposed upon itself. *Id.*

The key point of relevance in *ALC Development Corp.* was the Court's characterization of the restriction in *Boehner* as a "building restriction" rather than a "use restriction." *Id.* ¶ 12, 787 A.2d at 774–775. In *Boehner*, the landowner could only build a single, one-family dwelling. *Boehner*, 528 A.2d at 452. While this may have been a "building restriction," however, it was not an architectural one. The landowner was permitted to build any sort of dwelling he liked, so long as its facilities could only support one family and only his immediate family was living there. *Id.* The lesson appears to be that, while building restrictions do not directly regulate the use of property as a whole, they do regulate what structures may be placed on property. Those structures are in turn defined by how they are used.

The recent case of *Silsby v. Belch* supports this interpretation of the law. 2008 ME 104, 952 A.2d 218. In *Silsby*, the landowner's property was subject to the following covenant:

> The Grantees . . . will not construct . . . any buildings, with the necessary and convenient other buildings to serve a homestead, at a cost less than $8,000 . . . [and he or she] will not permit the premises to be used for any commercial purposes.

*Id.* ¶¶ 2, 8, 952 A.2d at 220–21. The landowner applied for a permit to convert an existing structure on the property into a three-unit apartment building. *Id.* ¶ 3, 952 A.2d at 220. Neighboring landowners challenged the action. *Id.*

On appeal, the neighbors argued that the covenant's use of the word "homestead" was a term of art indicating that only an "owner-occupied, single-family dwelling" could be built on the property. *Id.* ¶ 8, 952 A.2d at 221–22. The Court was not persuaded, finding that the covenant only used the word "homestead" to "describe the type and character of outbuildings that may be constructed upon the property." *Id.* ¶ 9, 952 A.2d at 222. While the deed expressly excluded commercial use,[1] "it contain[ed] no restriction on the character of the residential use. If a grantor intended to restrict property to owner-occupied, single-family residential use, it is a simple matter to plainly state such a restriction in the deed." *Id.* ¶ 10, 952 A.2d at 222. Further on, the Court reiterated: "The fact remains that the original grantor could have limited the use of this property to an owner-occupied, single-family residence if she wished by placing such commonly used language in the covenant." *Id.* ¶ 14, 952 A.2d at 223.

The Court's discussion in *Silsby* makes it clear that the term "single-family residence" or its equivalent designates the character of residential use allowed on a property. A structure containing multiple dwelling units capable of accommodating multiple families would have a residential character similar to that of a single-family dwelling, but it would not *be* a single-family dwelling. *See id.* ¶¶ 13–14, 952 A.2d at 222–23 (character of a multi-unit dwelling or a single-family dwelling is fundamentally different from a commercial enterprise like a department store or service station). Language restricting development to a "single-family dwelling" or its equivalent is

---

[1] The Court also held that renting residential apartments did not constitute a commercial use, but was instead a type of residential use. *Silsby*, 2008 ME 104, ¶¶ 8 n.6, 13–14, 952 A.2d at 222 n.6, 222-23.

8

"commonly used," and in Maine is understood to carry a definitional restriction on use. Indeed, *Boehner* demonstrates that use of a structure is the only objective way to define it as a "single-family" residence or dwelling. *See Boehner* 528 A.2d at 453 (restriction to a "one-family dwelling" did not control the architecture of that dwelling, and the covenant was not violated where there was no evidence that more than one family would live in the dwelling).

Turning to the case at hand, the Zahares' deed states:

3. These lots shall be known and described as residential lots and shall not be used except for residential purposes, except seasonal rentals. No structures shall be erected ... or permitted to remain on any residential building lot other than one detached, single-family dwelling, not to exceed two and one-half ... stories in height and a private garage for not more than two ... cars ....

4. No dwelling shall be permitted on any lot at a cost of less than $5,000.00, based upon cost levels prevailing on the date these covenants are recorded .... The ground floor area of the main structure, exclusive of one-story open porches and garages, shall not be less than 625 square feet for a one-story dwelling, no less than 550 square feet for a dwelling of more than one-story.

The Zahares would have this court interpret the first sentence of paragraph three as the only use restriction present in the cited language. Everything after, including the prohibition against structures other than a "detached, single-family dwelling," would be a building or architectural restriction. The court cannot accept this interpretation.

First, the Zahares would ignore the plain meaning of the words "one detached, single family dwelling." Regardless of whether it is characterized as a use or a building restriction, "one detached, single-family dwelling" connotes a single dwelling unit, standing free of other dwelling units, occupied by a single social "family" unit. The structure's design is irrelevant to its character as single-family residence. When the structure on the Zahares property contains two independent dwelling units, each

9

occupied by a separate "family," their structure by definition ceases to be "one detached, single-family dwelling."

The second problem with the Zahares interpretation is that it would render the phrase "one detached, single-family dwelling" into surplus language when read together with the rest of the covenants. The court has not been directed to any objective "single-family" form of architecture, leaving the phrase entirely subjective as an architectural standard and inherently ambiguous. Construing this ambiguity against restriction would render the term meaningless. *See Midcoast Cohousing*, 2008 ME 70, ¶ 10 n.3, 946 A.2d at 424 n.3. The better approach, as applied in *Boehner*, is to read the phrase "detached, single-family dwelling" as an objective restriction on use. The structure in *Boehner* was hardly traditional, but it was in fact a single-family home. *Boehner*, 528 A.2d at 452–53.

Furthermore, the covenants in the Zahares' deed go on to specify actual, objective architectural building criteria. For example, structures cannot be more than two and one-half stories in height, cannot have a garage capable of housing more than two cars, must meet a minimum square footage on the ground floor, and must cost more than $5,000, adjusted for inflation since the covenant was originally written. Under the Zahares interpretation of the covenant, a landowner could erect a five-unit apartment building in the subdivision, so long as it met the minimum objective building criteria and "looked like" a single-family home from the outside. *See Bennett*, 1999 ME 165, ¶ 10, 740 A.2d at 573. It would be unreasonable to ascribe such tenuous, subjective meaning to such a common and well-understood phrase.

The Zahares have violated their deed covenant limiting structures to "one detached, single-family dwelling" by renting a second, separate dwelling unit attached to their home to an admitted non-family individual. The court does not need to reach

10

the questions of whether the covenants allow the Zahares to rent the separate dwelling unit in their home to family members, what constitutes a "family," or whether and under what terms the Zahares may rent their entire dwelling.

The court recognizes that other jurisdictions have interpreted the phrase "single-family dwelling" or its equivalent differently, but also notes that there is no universal position and that outcomes are highly dependent on the precise facts before each court. *See* Mark S. Dennison, *Construction and Application of "Residential Purposes Only" or Similar Covenant Restriction to Incidental Use of Dwelling for Business, Professional, or Other Purposes*, 1 A.L.R.6th 135 §§ 5–6 (comparing cases finding that the phrase "single-family dwelling" in a deed covenant does or does not carry an inherent restriction on use). While foreign jurisdictions can provide instructive guidance, this court is both bound and persuaded by Maine precedent. The plain language of the Zaharas' deed precludes them from renting the dwelling unit above their garage to non-family members. The other issues raised by the parties are moot.

## CONCLUSION

The Zahares' motion for summary judgment is denied, and Ms. Leveris's request for judgment in her favor is granted.

Dated:        March 14 , 2011

ATTORNEY FOR PLAINTIFF:
DAVID A. LOURIE
189 SPURWINK AVENUE
CAPE ELIZABETH ME   04107

G. Arthur Brennan
Justice, Superior Court

ATTORNEY FOR DEFENDANT, TOWN OF OLD ORCHARD BEACH:
CHRISTOPHER L. VANIOTIS
BERNSTEIN SHUR SAWYER & NELSON
PO BOX 9729
PORTLAND ME   04104-5029

ATTORNEY FOR PARTY-IN-INTERST, ALICE LEVERIS:
WILLIAM D ROBITZEK
BERMAN & SIMMONS
PO BOX 961
LEWISTON ME   04243-0961

11