ST. BOTOLPH CLUB, INCORPORATED *vs.* BROOKLINE TRUST COMPANY & others.

Suffolk. May 16, 1935. — November 25, 1935.

Present: RUGG, C.J., PIERCE, DONAHUE, LUMMUS, & QUA, JJ.

*Equitable Restrictions. Evidence*, Presumptions and burden of proof.

A landowner claiming the benefit of equitable restrictions upon other land has the burden of showing that they are appurtenant to his land.

In construing in the light of the circumstances an instrument creating equitable restrictions, remaining doubt as to whether the restrictions apply to particular land should be resolved against their application.

On the facts, where four tenants in common of land created therein four lots along the frontage of the land and a fifth lot across the rear thereof, and by deeds among themselves transferred to each of them title to one of the four front lots, leaving the fifth lot in the rear owned in common, each such deed containing a restriction limiting the height of structures within a certain distance of the rear boundary of the front lot concerned in that deed and stating that the grantors and their successors should have certain remedies to abate the "nuisance" resulting from violation of the restriction by the grantee or his successors, the restriction was *held* not appurtenant to the fifth lot in the rear.

PETITION, filed in the Land Court on October 27, 1934, for registration of the title to land.

The case was heard by *Corbett*, J., who ordered a decree of registration giving the petitioner's land the benefit of the restriction described in the opinion. Certain respondents appealed and alleged exceptions.

*W. Rand*, for the respondents DeBlois and others, trustees, and others.

*M. B. Frankel*, for the respondent Brookline Trust Company.

*R. A. Cutter*, (*A. P. Teele* with him,) for the petitioner.

LUMMUS, J. On September 1, 1858, the Commonwealth of Massachusetts conveyed to George Goss and Norman C. Munson a parcel of land in Boston having an easterly frontage of one hundred twelve feet on Arlington Street at the corner of Newbury Street, opposite the Public Garden, and running back to the westward one hundred fifty-four feet, between Newbury Street and a passageway sixteen feet wide. Certain restrictions were imposed upon the land by the deed, but these are not now material. On the same day, Goss and Munson conveyed the same property to "Marshall S. Perry, Samuel Cabot, Jr., Edward H. Clarke, Physicians and Francis E. Parker Esquire, all of said Boston," subject to the same restrictions.

The four grantees divided the eastern or front part of the land, running back westerly one hundred four feet from Arlington Street, into four lots of unequal width on Arlington Street but all of the depth of one hundred four feet. Each of the grantees obtained sole ownership of one of these lots by deed of release and quitclaim from the other three cotenants, dated October 18, 1858, and on each lot a private residence was erected. These deeds left the four persons named holding as tenants in common the remaining or westerly part of the land, fifty feet wide on Newbury Street and the passageway, and having an easterly side line one hundred twelve feet long identical with the combined westerly or rear lines of the four lots just mentioned. Title to this remaining land on Newbury Street has now passed to the petitioner, which seeks to register as appurtenant to it equitable easements or restrictions over the four lots just mentioned, which, it is contended, were

created by the four deeds of release and quitclaim by which said lots passed into individual ownership.

Each of those deeds conveyed one of the four lots fronting on Arlington Street, subject to the restrictions imposed by the deed of the Commonwealth "and to the further restriction that no building or part of any more than twelve feet high above the level of Arlington Street, shall be erected within thirty feet of the Westerly boundary of the released premises; but the erection of any such building contrary to the last proviso shall not subject the Releasee, his heirs or assigns, to a forfeiture of his or their estate in said land, but such erection shall be conclusively deemed a nuisance, for which the Releasors, their heirs, representatives or assigns may have remedy by due process of law, or may at their option, enter or send agents on said land and remove and abate such nuisance, at the expense of the Releasee, his heirs or assigns, without being held responsible for any manner of trespass therefor."

Even if equitable restrictions rest on the specific performance of contracts (*Bailey* v. *Agawam National Bank*, 190 Mass. 20, 23, 24; *Codman* v. *Bradley*, 201 Mass. 361, 368; *Childs* v. *Boston & Maine Railroad*, 213 Mass. 91, 94), we assume without deciding that the fact that the contracts contained in the several deeds, if made for the benefit of the Newbury Street lot, would have the same person as obligor and one of the obligees, would not prevent the specific enforcement of the restriction in equity. *Cole* v. *Reynolds*, 18 N. Y. 74. *McMahon* v. *Rauhr*, 47 N. Y. 67, 71, 72. *Pelton* v. *Place*, 71 Vt. 430, 435. *Warren* v. *Stearns*, 19 Pick. 73. *Bemis* v. *Converse*, 246 Mass. 131, 135.

The deeds are silent as to whether the benefit of the restriction was to be appurtenant to land, and, if so, to what land. The obvious benefit to the four lots passing into individual ownership (*Snow* v. *Van Dam*, 291 Mass. 477, 480), the existence of a common scheme of restrictions affecting those four lots (*Parker* v. *Nightingale*, 6 Allen, 341), and the mention of heirs and assigns (*Springfield State Building Corp.* v. *Massachusetts Mutual Life Ins. Co.* 287 Mass. 317, 323), very likely showed that the restrictions

were intended to bind each of the lots on Arlington Street for the benefit of each of the others. But that is not the question. The question is, whether the restrictions became appurtenant also to the lot on Newbury Street which remained in common ownership.

The burden is on the party claiming the benefit of a restriction to show that it is appurtenant to his land. *Beals* v. *Case,* 138 Mass. 138, 141, 142. *Bessey* v. *Ollman,* 242 Mass. 89, 91. *Snow* v. *Van Dam,* 291 Mass. 477, 485. Doubtful cases, where the words, considered in the light of the circumstances, remain ambiguous, are resolved in favor of the freedom of land from servitude. *Sharp* v. *Ropes,* 110 Mass. 381, 385, 386. *American Unitarian Association* v. *Minot,* 185 Mass. 589, 595. The present restriction has reason for existence even though its benefit be limited to the four lots on Arlington Street. Nothing indicates that the four owners of those lots had any use for the remaining land on Newbury Street except to sell it. The creation of a restriction in favor of that lot would place an added burden on the lots which passed into individual ownership. In city blocks, it is unusual to provide for light and air along the side lines. The remedy provided in the deeds for the "nuisance" which would result from a violation of the restrictions, was ill adapted to a case in which the violator himself might be one of the parties entitled to abate the nuisance. On all the facts, a majority of the court think that the petitioner has failed to show a right to the benefit of the restrictions. The exceptions of the respondents are sustained, and the registration of the title of the petitioner is not to include the benefit of the restrictions created in the deeds making partition of the Arlington Street land. The appeals which raise the same question (G. L. [Ter. Ed.] c. 185, § 15; *Langevin* v. *Fletcher,* 273 Mass. 543, 547; *Bacon* v. *Kenneson,* 290 Mass. 14), are dismissed. *Universal Adjustment Corp.* v. *Midland Bank, Ltd. of London,* 281 Mass. 303, 310. *Royal Paper Box Co.* v. *Munro & Church Co.* 284 Mass. 446, 449. *Town Taxi, Inc.* v. *Goulston,* 287 Mass. 325.

*So ordered.*