Lewis I. NAIMAN and Pauline R. Naiman

v.

Roland A. BILODEAU.

Supreme Judicial Court of Maine.

Jan. 27, 1967.

Harold J. Shapiro, Gardiner, for appellants.

Frank E. Southard, Jr., Augusta, for appellee.

Before WILLIAMSON, C. J., and WEBBER, TAPLEY, RUDMAN, and DUFRESNE, JJ.

WEBBER, Justice.

The plaintiffs seek by injunction to enforce as against the defendant the provisions of a restrictive covenant imposed by deeds from a common grantor. The Justice below denied relief and the plaintiffs have appealed.

The restrictive clause in pertinent part provides:

"The above described lot is conveyed subject to the following restrictions for the benefit of all lots in Cobbosseecontee Shores and binding on the Grantor and Grantee until July 1, 1977, each and all of which restrictions may be enforced or enjoined by the Grantee, but said Grantor shall be under no obligation to enforce any of such restrictions or to restrain or enjoin any violation thereof.

"(1) The premises shall be used *for residential purposes only* and no building or any part of a building shall be erected thereon unless the plans of the main camp, cottage *or other dwelling* have been approved in writing by the grantors, unless the cottage has a minimum of 700 square feet of first floor space, asphalt roof and clapboard siding or better. No out building shall be erected until after the completion of the main building or cottage." (Emphasis ours.)

The defendant proposes to place upon his lot a so-called "mobile home", 46 feet by 10 feet, with a permanently attached addition of 300 square feet of living space plus a porch, all on a cement slab with a concrete block foundation. The proposed structure will be used for residential purposes, will contain more than 700 square feet of first floor space and will have aluminum roof and siding. In short, the proposed structure will meet all the specific requirements and the only issue is whether or not the covenant should be interpreted as excluding "mobile homes" entirely.

 We turn first to the law governing the interpretation of covenants restricting the use of land. In Leavitt et al. v. Davis et al. (1957), 153 Me. 279, 281, 136 A.2d 535, 537 we said: "A restrictive covenant ought not to be extended by construction beyond the fair meaning of the words." The majority rule which finds support in many cases is well stated in 20 C.J.S.2d 755, Sec. 187 in these terms: "Covenants and agreements restricting the free use of property are strictly construed against limitations upon such use. Such restrictions will not be aided or extended by implication or enlarged by construction * * *. Doubt will be resolved in favor of the unrestricted use of property, so that where the language of a restrictive covenant is capable of two constructions, the one that limits, rather than the one which extends it, should be adopted, and that construction should be embraced which least restricts the free use of the land." A few jurisdictions adopt a minority or "modern" view which does not adhere to strict construction. But even these courts construe such covenants strictly in what they deem to be appropriate circumstances. In Connor v. Clemons (1948), 308 Ky. 9, 213 S.W.2d 438, 439 the court, after expressing its adherence to the so-called "modern" view, went on to say: "We believe the modern rule * * * is that the strict construction rule should not be used to defeat the obvious intention of the parties though not precisely expressed, *but will be applied when ambiguous language creates a doubt as to what was prohibited. In the case of doubtful meaning, the restriction should be construed in favor of the free use of property and against the limitations."* (Emphasis ours.)

The Massachusetts court in St. Botolph Club v. Brookline Trust Co. (1935), 292 Mass. 430, 433, 198 N.E. 903, 904 said: "Doubtful cases, where the words, considered in the light of the circumstances, remain ambiguous, *are resolved in favor of the freedom of land from servitude."* (Emphasis ours.) Hemenway v. Bartevian (1947), 321 Mass. 226, 72 N.E.2d 536, 538, 172 A.L.R. 1320.

 The restrictions before us are ineptly drawn and are most ambiguous. It is clear that the premises must be used for residential purposes only and that the structure must in one alternative conform to certain minimum requirements as to square feet of "first floor space" and quality of roof and siding. There is no express restriction against trailers or "mobile homes". The use of the term "or other dwelling" suggests broad latitude as to the type of structure which is contemplated as being permissible. Webster's Third New International Dictionary (1961 Ed.) defines "dwelling" as "a building or construction used for residence: abode, habitation." We are satisfied that upon application of the rules of construction above enunciated, the type of "dwelling" here proposed is not proscribed by the language of this restriction.

The Justice below accurately summarized the situation here presented in these terms: "While it may well be that the developer and other interested parties, in retrospect, wish that the restrictive covenant in the deed were more specific in its exclusion, and propose to read into such covenant a prohibition against house trailers or mobile homes, the single Justice does not find that such exclusion is established. To do so would require reading into the restriction an implication which is not found. Had the creation of the restriction in 1957 intended to

exclude house trailers, a simple declaration would have accomplished it."

Plaintiffs call our particular attention to Pagel v. Gisi (1955), 132 Colo. 181, 286 P. 2d 636 as supportive of their position. In that case the court held that a house trailer "parked" on defendant's lot violated a restrictive covenant limiting the use of the land to "dwelling houses only", where in addition the defendant had knowledge that there was a "general development of the area" for "new permanent homes." The court viewed the trailer as a vehicle rather than a "permanent home." It portrayed this "parked" trailer as a "portable unit designed to be hauled from place to place" and again as an "ambulatory unit." We are by no means certain, however, that the Colorado court would have reached the same result in a case involving a mobile home permanently established on foundation and built into a larger structure, absent any plan of "general development" for limited purposes as was the case in Pagel. We think Pagel rests upon its own facts which are in important respects different from those in the instant case.

Plaintiffs also rely in part on Wright v. Michaud (1964), 160 Me. 164, 200 A.2d 543. In that case a zoning ordinance expressly excluded trailers and mobile homes (whether on foundation or not) from any zone in the municipality. The only issues presented were whether or not such a provision was within the police power of the municipality and whether or not the Board of Appeals had jurisdiction to grant a variance. The decision is not helpful in resolving the problems presented by the ambiguously worded covenant in the case before us.

We conclude as did the justice below that the language of this covenant does not with sufficient clarity express any intention to prohibit the proposed use of defendant's land and we will not "extend the construction beyond the fair meaning of the words."

Appeal denied.

MARDEN, J., did not sit.