1998 ME 165

**Richard LaBELLE, et al.,**

v.

**David BLAKE, et al.**

Supreme Judicial Court of Maine.

Argued April 7, 1998.

Decided June 30, 1998.

George M. Jabar, II (orally), Daviau, Jabar & Batten, Waterville, for Plaintiffs.

Robert E. Sandy (orally), Sherman & Sandy, Waterville, for Defendants.

Before ROBERTS, CLIFFORD, RUDMAN, DANA, LIPEZ, and SAUFLEY, JJ.

LIPEZ, Justice.

[¶ 1] David and Suzanne Blake appeal from the judgment entered in the Superior Court (Kennebec County, *Calkins, J.*) declaring that they are not entitled to use a right-of-way which crosses property owned by their neighbors, Richard and Lois LaBelle. The Blakes argue, *inter alia*, that the court erred by determining that the LaBelles' predecessor-in-interest did not reserve an easement appurtenant for the benefit of the Blake property. We affirm the judgment.

I.

[¶ 2] In the early 1970s Paris Mosher ("Paris") owned two parcels of adjacent property near Great Pond in Rome, Maine. *See* attached sketch. The first parcel of land, lying to the north, is known as the "woodlot" and is not adjacent to the pond. The second parcel of land, lying to the south, is known as the "farm" and includes a small area known as the "beach lot." These parcels, as well as numerous shoreline properties that Paris had previously sold to a developer, are accessible by Crane Lane. Crane Lane is a private road which begins at a nearby public highway called Jamaica Point Road running along the westerly border of the subject properties, crosses the woodlot in an easterly direction towards the shoreline, and eventually splits into North Crane Lane (servicing northerly shoreline properties) and South Crane Lane (servicing southerly shoreline properties).

[¶ 3] On December 24, 1974, Paris executed a deed conveying the farm to his son, Alton Mosher ("Alton"). Nearly ten months later on October 3, 1975, Paris executed a deed conveying the woodlot to his daughter, Lois LaBelle.[1] In addition to reserving a right-of-way for the benefit of the existing shoreline properties, LaBelle's woodlot deed included the following reservation of rights:

and reserving a right of way also to the grantor herein along said right of way from grantor's property southerly of the property herein conveyed to the Jamaica Point Road.

LaBelle's deed was recorded on October 20, 1975; Alton's deed was recorded later the same day.

[¶ 4] In 1989 Alton sought municipal approval to create a subdivision called "South Jamaica Shores" on the farm property. Because Crane Lane crosses the LaBelles' woodlot property, Alton asked the LaBelles for permission on behalf of the prospective subdivision lot owners to use Crane Lane for ingress and egress to the subdivision. The LaBelles refused to grant permission, and the municipality therefore required Alton to construct an alternative access road as a condition of the subdivision approval. Alton agreed to this condition and constructed a new road called "Crane Lane Extension" which does not cross the LaBelles' woodlot property.

[¶ 5] In 1992 Alton sold the beach lot, which was a part of the South Jamaica Shores subdivision, to David and Suzanne Blake. In addition to conveying to the Blakes a right-of-way over Crane Lane Ex-

---

1. Lois later conveyed the woodlot to herself and her husband, Richard LaBelle, as joint tenants.

tension, the deed also quitclaimed to the Blakes a right-of-way over Crane Lane. Despite the LaBelles' objections, the Blakes used Crane Lane, rather than Crane Lane Extension, to access Jamaica Point Road.

[¶ 6] In 1994 the LaBelles commenced an action for trespass against the Blakes in the Superior Court. In their answer to the complaint, the Blakes asserted the affirmative defense that their beach lot had the benefit of an easement appurtenant over the LaBelles' property. During the jury-waived trial, both parties informed the court that they sought a judicial declaration as to whether the Blakes' use of Crane Lane is prohibited. The court determined that the Blakes had no right-of-way over that portion of Crane Lane which crosses the LaBelles' property and entered a judgment in favor of the LaBelles. This appeal followed.

## II.

[¶ 7] The Blakes argue that the court erred by determining that Paris Mosher's deed to Lois LaBelle did not reserve an easement appurtenant over the woodlot for the benefit of the farm property.[2] In its decision, the court first examined the sequence of Paris's deeds to his children: in 1974 Paris executed a deed conveying the southerly farm to Alton, and in 1975 Paris executed a deed conveying the northerly woodlot to LaBelle. The court then examined the language of the reservation in the LaBelle deed: "[R]eserving a right of way also to the grantor herein along said right of way from grantor's property southerly of the property herein conveyed to the Jamaica Point Road." The court concluded that because Paris had deeded the farm to Alton nearly ten months earlier, Paris owned no dominant estate to which the easement could be appurtenant. *See Gilder v. Mitchell,* 668 A.2d 879, 881 (Me.1995) (an easement appurtenant is created to benefit a dominant estate

and runs with the land). Rather, in the absence of both a dominant and servient estate, the reservation in the LaBelle woodlot deed simply created an easement in gross that terminated upon Paris's death. *See O'Neill v. Williams,* 527 A.2d 322, 323 (Me. 1987) (an easement in gross is a purely personal right, is not assignable, and terminates at the death of the person for whom it was created).

[¶ 8] The Blakes do not dispute the legal significance of a prior conveyance to Alton. Rather, they contend that the LaBelles failed to establish that Paris conveyed the farm to Alton before he conveyed the woodlot to LaBelle. Observing that a deed conveys title only upon delivery, *see Hood v. Hood,* 384 A.2d 706, 707 (Me.1978), the Blakes contend that the LaBelles failed to present evidence that the deeds were delivered at the time of their respective executions. In the absence of such evidence, they argue, the deeds conveyed title only upon their respective recordations in the registry of deeds. It is undisputed that Alton's farm deed was recorded *after* the LaBelles' woodlot deed; thus, they contend, Paris still owned the farm at the time he conveyed the woodlot to LaBelle and could have reserved an easement appurtenant for the benefit of the farm.

[¶ 9] The Blakes incorrectly assign the burden of proof regarding delivery to the LaBelles. The LaBelles' complaint was styled as an action for trespass, and the Blakes' answer included the affirmative defense that their beach lot had the benefit of an easement appurtenant over the LaBelles' property. The Blakes had the burden of proving this affirmative defense, *see* 1 FIELD, McKUSICK & WROTH § 8.7 (1970); *Bangert v. Osceola County,* 456 N.W.2d 183, 186 (Iowa 1990), which necessarily included proving nondelivery of the deeds at the time of their respective executions.[3] *See, e.g, Molk v.*

---

2. The Blakes also challenge the court's alternative basis for its judgment, which concerned the effect of conditions contained in the South Jamaica Shores subdivision plan on the Blakes' putative right to use the LaBelles' property. Because we affirm the court's judgment on the basis of its primary rationale, we have no occasion to consider the Blakes' challenge to the court's alternative rationale.

3. We note that the LaBelles' claim, which was initially styled in the complaint as an action for trespass, took on the characteristics of an action for a declaratory judgment as the jury-waived trial proceeded. Both parties informed the court during the trial that they sought only a judicial declaration as to whether the Blakes were entering illegally upon the LaBelles' property, and the

*Micklewright,* 151 Conn. 606, 201 A.2d 183, 185 (1964) (where the defendant asserted affirmative defense that mortgage deed had never been delivered to plaintiff, defendant had the burden of proving nondelivery). The Blakes presented no evidence to show that Paris intended to retain title to the properties until the deeds' respective recordations on October 20, 1975. In fact, the Blakes did not even raise the issue of nondelivery during the Superior Court proceedings, but rather argued generally that the beach lot was benefitted by an easement appurtenant across the LaBelles' property. Given the Blakes' failure to establish that Paris retained title to the properties until the deeds were recorded—and their consequent failure to establish that the beach lot had the benefit of an easement appurtenant across the La-Belles' property—we find no error in the court's judgment.[4]

The entry is:

*Judgment affirmed.*

---

court's judgment was limited to such a declaration. Whether the LaBelles' action is framed as one for trespass or as one seeking a declaratory judgment, however, does not alter the allocation of the burden of proof regarding the existence of an easement appurtenant—and, ultimately, delivery of the deeds. The allocation of the burden of proof in declaratory judgment actions is determined by the gravamen of the complaint. *See Hodgdon v. Campbell,* 411 A.2d 667, 670 (Me. 1980). "The party who asserts the affirmative of the controlling issues in the case, whether or not he is the nominal plaintiff in the [declaratory judgment] action, bears the risk of non-persuasion." *Id.* at 670–71. Thus, the Blakes, as the parties asserting the affirmative of the controlling issue of the existence of an easement appurtenant, bear the burden of proof on this matter.

4. Contrary to the Blakes' contention, this result does not render Paris's reservation of a right-of-way in the woodlot deed meaningless. *Cf. Mor-*

*rell v. Rice,* 622 A.2d 1156, 1159 (Me.1993) (inferring that deeds signed on different dates were delivered simultaneously, in order to fulfill parties' reasonable intentions). The woodlot deed successfully reserved to Paris an easement in gross. There is nothing within the easement reserved by Paris to indicate that the reserved privilege was intended to be more than a mere personal right. The retained right-of-way within the deed from Paris to LaBelle does not profess to create a benefit in favor of any land and speaks only in terms of a personal benefit "to the grantor." *See, e.g., LeMay v. Anderson,* 397 A.2d 984, 987 (Me.1979). The reservation's reference to "the grantor's property southerly of the property herein conveyed to the Jamaica Point Road" can be reasonably construed as an effort to define the geographical beginning and ending points of the roadway easement, rather than as an effort to benefit the southerly farm.

N
W + E
S

26

38

30

34

P/O 26-3

WOODLOT

CRANE LANE
(splits into North
and South Crane
lanes)

54A

JAMAICA POINT ROAD

boundary between
woodlot and farm

FARM

13

54

13-1

13-2

13-3

13-4

13-5

CRANE LANE
EXTENSION

7

8

9  10A

10

11

12

GREAT POND

BLAKES' BEACH lot / LOT #5

14

15

16

Not an exhibit; prepared for illustrative
purposes only.