2005 ME 90

**Jeffrey E. GREEN et al.**

v.

**James H. LAWRENCE.**

Supreme Judicial Court of Maine.

Argued: May 27, 2005.
Decided: July 18, 2005.

---

Mary A. Denison, Dyer Goodall and Federle, L.L.C., Augusta, for plaintiffs.

Roy T. Pierce, Preti Flaherty Beliveau Pachios & Haley, L.L.P., Portland, for defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, DANA, ALEXANDER, CALKINS, and LEVY, JJ.*

* Justice Paul L. Rudman sat at oral argument and participated in the initial conference, but retired before this opinion was certified.

CLIFFORD, J.

[¶ 1] James H. Lawrence appeals from a summary judgment entered in the Superior Court (Kennebec County, *Studstrup, J.*) in favor of Jeffrey E. Green and other building and lot owners of the Camp Menatoma subdivision. The judgment declares that certain lots in the subdivision may not be used for residential development. Lawrence contends that (1) the covenant restricting lots 8 through 11 to wood lot use does not act as a perpetual ban on development of the lots, (2) the court should have applied the relative hardship doctrine to render the wood lot use restriction inapplicable, and (3) the wood lot use restriction is unreasonable. We are unpersuaded by Lawrence's contentions and affirm the judgment.

## I. BACKGROUND

[¶ 2] In 1979, Lawrence, as president of Menatoma Realty Corporation, sought approval from the Town of Readfield's Planning Board for subdividing an eighty-nine-acre property, known as Menatoma Camp, into eighteen lots. Additionally, Lawrence applied for approval with the Department of Environmental Protection (DEP). The Planning Board approved his subdivision subject to approval by the DEP. The DEP approved the subdivision subject to certain conditions. One of those conditions limited the use of lots 8 through 11 on the subdivision to wood lot use only. The DEP determined that lots 8 through 11 could not be developed because they could not support subsurface sewage disposal.

[¶ 3] The Menatoma subdivision plan dated March 18, 1980, was altered to reflect the DEP's order, noting that lots 8 through 11 were "not suitable for subsurface sewage disposal." Moreover, paragraph seven of the covenants depicted on the plan stated that "[l]ots 8, 9, 10, and 11 are restricted to use as wood lots only." The Planning Board approved this plan.

Green and the other lot owners purchased their subdivided lots from Menatoma, with deeds referring to the plan dated March 18, 1980.

[¶ 4] In early 2003, because of changes in soil requirement standards, Lawrence filed applications with the DEP and the Planning Board seeking approval for residential development of lots 8 through 11. Additionally, Lawrence prepared a revised subdivision plan that removed the notation regarding sewage disposal, as well as the covenant outlined in paragraph seven, restricting lots 8 through 11 to wood lot use. The Planning Board approved the revised plan, and two days later the DEP also issued its approval.

[¶ 5] In response, Green and other lot owners filed a complaint in Superior Court seeking a declaratory judgment that lots 8 through 11 are limited to wood lot use as provided in the plan dated March 18, 1980, and requesting a permanent injunction preventing residential development of lots 8 through 11 unless all owners consent to remove the restriction. Green and the other lot owners moved for a summary judgment, and the court entered a summary judgment in their favor. Lawrence appeals the court's decision.

## II. DISCUSSION

[¶ 6] "We review the grant of a motion for a summary judgment de novo." *Lever v. Acadia Hosp. Corp.*, 2004 ME 35, ¶ 2, 845 A.2d 1178, 1179. We consider the evidence "in the light most favorable to the party against whom the summary judgment has been granted in order to determine if the parties' statements of material facts and referenced record evidence reveal a genuine issue of material fact." *Id.* Because there is no dispute as to the material facts, the court appropriately considered summary judgment.

 [¶ 7] Lawrence contends that the court erred in concluding that the phrase "wood lot use" is unambiguous, and thus enforceable. We disagree. "Deed construction is a question of law that we review de novo." *ALC Dev. Corp. v. Walker*, 2002 ME 11, ¶ 10, 787 A.2d 770, 774. "The first step in any analysis of the language in a deed is to 'give words their general and ordinary meaning to see if they create any ambiguity. If the words create no doubt, the deed is clear and unambiguous.'" *Bennett v. Tracy*, 1999 ME 165, ¶ 8, 740 A.2d 571, 573 (quoting *Rhoda v. Fitzpatrick*, 655 A.2d 357, 360 (Me.1995)). Only if the language is ambiguous may extrinsic evidence be admitted in order to attempt to assess the parties' intentions. *Bennett*, 1999 ME 165, ¶ 8, 740 A.2d at 573. Otherwise, if "the language of a deed is unambiguous, it will guide interpretation of the parties' intent." *Id.* (citations omitted).

██ [¶ 8] Even though restrictive covenants must be narrowly construed, *see Naiman v. Bilodeau*, 225 A.2d 758, 759 (Me.1967), the words on the face of the plan dated March 18, 1980, plainly and unambiguously provide that lots 8 through 11 are restricted to wood lot use only. The court concluded that the "term 'wood lot' is a common term describing the use of a piece of property for growing and harvesting trees," and that it is a commonly understood term, especially in Maine. Thus, extrinsic evidence need not be considered when analyzing the intent of the parties. The court correctly determined that the term "wood lot use" is not ambiguous.

██ [¶ 9] Lawrence also contends that the doctrine of relative hardship should be adopted in the State of Maine, and should be applied in this case to render the restrictive covenant inapplicable. Relative hardship, also known as "balancing the equities," may be applied in situations where enforcement of the restrictive covenant will harm the defendant without a substantial benefit to the neighboring land. *See* 9 RICHARD R. POWELL, POWELL ON REAL PROPERTY § 60.10(3) (Michael Allan Wolf ed., 2004). In considering whether a covenant should be enforced pursuant to the doctrine of relative hardship, the inquiry involves the extent of disproportion between the harm and benefit to each party resulting from the covenant. *See id.*; *Lange v. Scofield*, 567 So.2d 1299, 1302 (Ala.1990); *see also* RESTATEMENT (FIRST) OF PROPERTY § 563 (1944) ("Injunctive relief against violation of the obligation arising out of a promise respecting the use of land will be denied if the harm done by granting the injunction will be disproportionate to the benefit secured thereby.").

[¶ 10] Even if we were to adopt the relative hardship doctrine, it would not be appropriate to apply the doctrine in the circumstances of this case. Green and the other lot owners purchased their property with the clear understanding that lots 8 through 11 were subject to a restrictive covenant rendering a portion of the subdivision undevelopable. Subsequent development of lots 8 through 11 would certainly have an impact on the remaining subdivision lot owners. Moreover, Lawrence had knowledge of the restrictive covenant before filing the plan, as he was the party who drafted the covenant in the first place. *See* 9 POWELL ON REAL PROPERTY § 60.10(3) (even if the harm is disproportionate, a restrictive covenant should be enforced if the defendant had knowledge of it prior to development). Because Lawrence created the restriction himself, and because the development of lots 8 through 11 impacts Green and the other lot owners, application of the relative hardship doctrine in this case would be inappropriate.

[¶ 11] Finally, Lawrence contends that enforcement of the wood lot use restriction is unreasonable, and that it should not be enforced in equity. A restrictive covenant will be enforced in equity only if it is reasonable under the circumstances. *Friedlander v. Hiram Ricker & Sons, Inc.*, 485 A.2d 965, 968 (Me.1984). Although the restrictive covenant limits the use of certain lots in the subdivision, such a restriction is not unreasonable. Moreover, Lawrence is the one who created the restriction, and was well aware of the limits on the use of the property at the time of the filing.

The entry is:

Judgment affirmed.