STATE OF MAINE
YORK, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. RE-14-78

INGRID DOYON as Trustee of the
Oscar Olson, Jr. 2012 Trust, u/a dated
February 17, 2012,

Plaintiff,

v.

**ORDER**

NEIL F. SULLIVAN et al.,

Defendants.

Plaintiff Ingrid Doyon, trustee of the Oscar Olson, Jr. 2012 trust, brings this action seeking a declaratory judgment clarifying rights in a parcel of land in York. At issue is whether the lot may be used to construct a garage. The court denied cross-motions for summary judgment on the grounds that the deed was ambiguous because there were several plausible, conflicting interpretations and whether the deed was "reasonably and equally susceptible" to one interpretation or another was a disputed issue of material fact. *See Friedlander v. Hiram Ricker & Sons, Inc.*, 485 A.2d 965 (Me. 1984). Plaintiff has moved for reconsideration.

"Motions for reconsideration of an order shall not be filed unless required to bring to the court's attention an error, omission or new material that could not previously have been presented." M.R. Civ. P. 7(b)(5). The rule "is intended to deter disappointed litigants from seeking 'to reargue points that were or could have been presented to the

1

court on the underlying motion.'" *Shaw v. Shaw*, 2003 ME 153, ¶ 8, 839 A.2d 714. The court has discretion to deny such a motion without a hearing. M.R. Civ. P. 7(b)(5).

Plaintiff's motion to reconsider argues that because the deed is susceptible to more than one interpretation, plaintiff is entitled to the least restrictive interpretation as a matter of law. The court explicitly considered and rejected this very argument in the order. The deed is ambiguous, which creates a triable issue of fact as to meaning. If the factfinder concludes that the deed is "reasonably and equally susceptible" to more than one interpretation, the least restrictive interpretation will apply. That determination, however, cannot be made on summary judgment because the meaning of the ambiguous deed and the choice among conflicting interpretations are disputed issues of material fact. The motion to reconsider is denied.

The entry shall be:

The Plaintiff's motion for reconsideration is DENIED.

SO ORDERED.

DATE: October 6, 2015

_____
John O'Neil, Jr.
Justice, Superior Court

2

RE-14-78

ATTORNEYS FOR PLAINTIFFS
DAVID J JONES
JENSEN BAIRD GARDNER HENRY
11 MAIN STREET SUITE 4
KENNEBUNK ME  04043

ROY PIERCE
JENSEN BAIRD
P O BOX 4510
PORTLAND ME  04112

ATTORNEYS FOR DEFENDANTS JESSICA A & NEIL F SULLIVAN:
CHRISTOPHER PAZAR
NATHANIEL R HUCKEL BAUER
MICHAEL DEVINE
DRUMMOND & DRUMMOND LLP
ONE MONUMENT WAY
PORTLAND ME  04101

PRO SES
LAWRENCE H GENNARI & DENISE A PELLETIER
 85 PINE STREET
WESTON MA  02493

GEORGE H BROWN & SHEILA E PHILLIPS
P O BOX 415
CONTOOKCOCK NH  03229

PANAGIOTIS V & ANNE BARAS
296 TEMPLE ROAD
WALTHAM MA  02452

MARY BURKE TRUSTEE
P O BOX 221
YORK BEACH ME  03910-0221

THOMAS S NAYMIE
10 SPRING LANE
WESTWOOD MA  02090

CHARLENE F PASTORE
11 FREEDOM WAY
WALPOLE MA  02081

STATE OF MAINE
YORK, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. RE-14-78

INGRID DOYON as Trustee of the
Oscar Olson, Jr. 2012 Trust, u/a dated
February 17, 2012,

Plaintiff,

v.                                                          **ORDER**

NEIL F. SULLIVAN et al.,

Defendants.


## I. Background

### A. Procedural History

This case concerns a parcel of land in York. Plaintiff Ingrid Doyon, trustee of the Oscar Olson, Jr. 2012 trust, brings this action seeking a declaratory judgment clarifying the Plaintiff's rights in the parcel ("Lot 72"): in particular whether a certain deed restriction applies to the property, prohibits certain uses, and may be enforced by the Defendants. Both the Plaintiff and the Defendants who have appeared move for summary judgment.

### B. Facts

In 1912, Charles Donovan acquired title to a tract of land in York situated on a peninsula known as Nubble Point. The following year, Donovan subdivided the land into

1

93 parcels, depicted on a plan dated 1913 and recorded in 1915 at Book 7, Page 64 in the York County Registry of Deeds. (Pl.'s S.M.F. ¶ 1.) Donovan made a number of conveyances over the years and recorded a revised plan in 1936. Donovan recorded a second revised plan in 1941 that carved out Lot 72, the lot at issue in this case. (Pl.'s S.M.F. ¶ 8.) At the time of the conveyance, he retained ownership of a tract of land that was later subdivided and conveyed to Defendants' predecessors-in-title. (See Pl.'s S.M.F. ¶¶ 10-16.)

In 1941, Donovan conveyed Lot 72 to Ellwood N. Hennessey and Marion L. Hennessey by deed ("the Hennessey Deed") recorded at Book 967, Page 368 in the York County Registry of Deeds. (Pl.'s S.M.F. ¶ 9.) The Hennessey Deed also conveyed Lot 3 and Lot 5 and referred to the 1941 plan. (Pl.'s S.M.F. ¶¶ 8-9.) The Hennessey Deed contained the following language:

> The foregoing described and conveyed lots or parcels of land are conveyed subject to the various restrictions, all of which shall run with the land, to wit:
> (a) No building of any kind whatever shall be erected upon said Lot Number Five (5).
> (b) No building, other than a new, one-family house shall be erected on said Lot Number Three (3). Said house shall cost not less than fifteen hundred dollars ($1,500). It shall not be nearer Lot Number Two (2), nor "Marycliff Avenue", than twenty (20) feet in either case. A private garage may be erected however, upon said lot.
> (c) A private garage, for use with said Lot Number Three (3), may be erected upon said Lot Number Seventy-Two (72). It shall not be nearer "Mary-cliff Avenue" than forty (40) feet, and not nearer Lot Seventy-One (71) than twenty (20) feet, and it shall not be used for dwelling purposes of any kind.

(Pl.'s Ex. 33.) Lots 3 and 5 have been conveyed to a third party, and the Plaintiff retains only Lot 72.

2

Defendants Joseph J. Fantini and Ann J. Fantini own Lot 76, which was conveyed to them by deed from James J. Maher and Maura J. Maher, as trustees of the Maura J. Maher Revocable Trust, recorded at Book 16414, Page 40. Charles K. Shelton and Mary K. Shelton first conveyed Lot 76, as depicted on a 1966 plan, to Oscar Olson, Jr. in 1966 by a deed recorded at Book 1727, Page 467. (Pl.'s S.M.F. ¶ 15.) Olson later acquired Lot 72 from the Hennesseys on April 20, 1979 by a deed recorded at Book 2497, Page 116. (Pl.'s Ex. 75.) Olson conveyed Lot 76 on October 30, 1979. (Pl.'s Ex. 48.) Olson thus held Lot 72 and Lot 76 simultaneously from April to October of 1979. Olson owned Lot 72 until he conveyed the property to the Plaintiff shortly before his death.[1]

Defendants Neil F. Sullivan and Jessica A. Sullivan own Lot 81 as depicted on a plan revised in 1961. Defendant Raymond J. Naymie owned Lot 92, also depicted on the 1961 plan, until he died testate in 2013. (Pl.'s Ex. 62.) Thelma G. Naymie, personal representative of the Estate of Raymond J. Naymie, has been substituted as defendant. The Defendants all trace their chain of title to the Sheltons, who acquired the remaining Nubble Point lots from Donovan in July 1944. (Pl.'s S.M.F. ¶¶ 10-11.)

## II. Discussion

### A. Summary Judgment Standard and Deed Construction

"Summary judgment is appropriate when review of the parties' statements of material facts and the referenced record evidence indicates no genuine issue of material

---

[1] Defendants assert a number of material facts regarding Olson's efforts in 2008 or 2009 to have neighbors on Nubble Point agree to release the restriction. Plaintiff objects on hearsay grounds; Defendants contend the statement is a statement against interest. *See* M.R. Evid. 804(4). To the extent the assertion is offered for the truth—that Olson knew and believed the property was encumbered by the restriction—this would be an opinion or legal conclusion and inadmissible. *Ashemore v. Litsinberger*, 270 A.2d 448, 450 (Me. 1970) (holding opinions or legal conclusions, even if statements against interest, inadmissible).

3

fact that is in dispute, and, accordingly, the moving party is entitled to judgment as a matter of law." *Connolly v. Maine Cent. R. Co.*, 2009 ME 43, ¶ 7, 969 A.2d 919 (citation omitted). "The proper construction of a deed is a question of law." *Bennett v. Tracy*, 1999 ME 165, ¶ 7, 740 A.2d 571; *see also Green v. Lawrence*, 2005 ME 90, ¶ 7, 877 A.2d 1079 (stating that where deed is unambiguous, the language guides the court's intent analysis and interpretation).

"If the language of the deed is ambiguous, and the intention of the parties is in doubt, the court may then resort to rules of construction and may examine the deed in light of extrinsic circumstances surrounding its execution." *McGeechan v. Sherwood*, 2000 ME 188, ¶ 24, 760 A.2d 1068. The court may consider extrinsic evidence to interpret a deed and enter summary judgment where the material facts are undisputed. *See Friedlander v. Hiram Ricker & Sons, Inc.*, 485 A.2d 965, 968 (Me. 1984). Interpretive devices, including rules of construction, may be used to construe a deed so long as the results "are not absurd or manifestly inconsistent with the parties' intentions apparent from the face of the deed." *Id.* (quoting *Snyder v. Haagen*, 679 A.2d 510, 513 (Me. 1996)).

There are two issues presented: (1) whether the deed restriction prohibits construction of a residence or other dwelling structure on Lot 72, and (2) if prohibited, whether the Defendants are entitled to enforce the restriction.

**B. The Hennessey Deed is Ambiguous**

4

The Plaintiff has the burden of proof in this case.[2] In the Plaintiff's' view, the Hennessey Deed Restriction ("the Restriction") does not restrict Lot 72, except to prohibit use of a garage as a dwelling. Defendants respond that this interpretation contradicts the plain language of the deed, makes little sense, and contravenes the grantor's intent—to limit structures on Lot 72, if any, to a garage and to prohibit the use of the garage as a dwelling.

The principle task of interpretation is to discern the parties' intent, "gathered from all parts of the instrument, giving each word its due force, and read in the light of existing conditions and circumstances." *Friedlander*, 485 A.2d at 972. An ambiguity arises when the deed "is reasonably susceptible of two different interpretations." *Id.*

Deed interpretation begins with the deed language. The relevant portion states:

The foregoing described and conveyed lots or parcels of land are conveyed subject to the various restrictions, all of which shall run with the land, to wit:
(a) No building of any kind whatever shall be erected upon said Lot Number Five (5).
(b) No building, other than a new, one-family house shall be erected on said Lot Number Three (3). Said house shall cost not less than fifteen hundred dollars ($1,500). It shall not be nearer Lot Number Two (2), nor "Marycliff Avenue", than twenty (20) feet in either case. A private garage may be erected however, upon said lot.
(c) A private garage, for use with said Lot Number Three (3), may be erected upon said Lot Number Seventy-Two (72). It shall not be nearer

---

[2] The Plaintiff contends the Defendants have the burden to establish the existence and scope of the negative restriction on Lot 72. In *Labelle v. Blake*, 1998 ME 165, ¶ 9, 714 A.2d 145, the Plaintiffs brought an action for trespass, to which the Defendants asserted the affirmative defense that they had an easement to enter the land at issue. Because the Defendants asserted an affirmative defense, the Defendants had the burden of proof as to that issue. Unlike *Labelle*, the Defendants in this case have not asserted any affirmative defenses and do not claim an affirmative easement that defeats the Plaintiff's claim; rather, they have appeared, asserted the negative restriction on Lot 72 benefits their properties, and disputed Plaintiff's proposed construction of the restriction. The Plaintiff seeks a declaratory judgment declaring that a residence and accessory garage may be built on Lot 72. The Plaintiff thus bears the ultimate burden of persuasion to obtain the relief sought. *See* Horton & McGehee, *Maine Civil Remedies* § 3-2(d)(3) at 45 nn. 95-96 (4th ed. 2004) (distinguishing restrictive covenant from easement cases).

5

"Mary-cliff Avenue" than forty (40) feet, and not nearer Lot Seventy-One (71) than twenty (20) feet, and it shall not be used for dwelling purposes of any kind.

(Pl.'s Ex. 33.)

The Plaintiff maintains that unlike the language used in (a) and (b), which employ clear limiting language, i.e., "no building", (c) utilizes permissive language and states a private garage "may" be constructed, and if constructed, "shall not be used for dwelling purposes of any kind." The Plaintiff reads this to mean the grantor intended to restrict only uses of a garage built on Lot 72, not to prohibit any other type of structure or potential use of that structure. If (c) restricts only garages, Plaintiff reasons that constructing a residence for dwelling purposes would not contravene the restriction.

Defendants respond that the Plaintiff's interpretation is contradicted by the language of the deed and logically unsupportable. If (c) was merely suggestive, Defendants argue, the court would have to read the word "restriction" out of the deed and assume, without any further evidence, that the grantor specifically intended to prohibit only garages used as a dwellings, but not other dwelling structures. More importantly, such a narrow interpretation would effectively allow any structure to be built, including a residence or any number of buildings that could be used for dwelling purposes. The Plaintiff's reading, taken further logically, would also allow a garage used for the benefit of Lot 5 rather than Lot 3. Defendants argue this would frustrate the intent of the grantor to prohibit dwellings on Lot 72 and contravene the long-standing assumption in the community and by the Plaintiff's predecessor-in-interest that Lot 72 is a garage lot.

Lot 72 was conveyed together with Lots 3 and 5 to a single owner. The conveyances and the restrictions attached to each must therefore be considered as a

6

whole. *Penley v. Emmons*, 117 Me. 108, 110, 102 A. 972, 973 (1918) ("[T]he cardinal rule for the interpretation of deeds is the expressed intention of the parties, gathered from all parts of the instrument, giving each word its due force.") When considered together, the restrictions do not operate in isolation, but rather appear to regulate development on the lots conjunctively, with each restriction tailored to effectuate a particular use of the lot. To this end, the Hennessey Deed limited Lot 3 to allow "a new, one-family house" and a garage, prohibited construction of "building of any kind whatever" on Lot 5, and provided that a private garage may be constructed on Lot 72 and used in conjunction with Lot 3.

The language of subsection (c) could either (1) prohibit only a garage used as a dwelling and allow other structures and uses, including a dwelling residence, or (2) allow only a garage to be constructed, and prohibit any other type of structure, including one that could be used as a dwelling. There are two plausible interpretations and thus the restriction is ambiguous.[3]

The Plaintiff commenced this action to obtain a declaratory judgment that Lot 72 is free from any restriction on constructing a dwelling residence. It is unclear why the grantor prohibited use of a *garage* as a dwelling, but otherwise would allow *any other type of structure* to be used as a dwelling. The Defendants pin down on this logical inconsistency to argue the unambiguous terms of the deed prohibit the Plaintiff's

---

[3] The complaint asserts that the restriction is ambiguous. (Compl. ¶ "This action is brought . . . . to obtain a declaratory judgment determining the interpretation, effect and enforceability of an *ambiguous* provision in a deed . . . .") (emphasis added). The Plaintiff, in moving for summary judgment, contends "ambiguous" meant "unclear" and her interpretation is the only reasonable one. Whether the Plaintiff's interpretation is the only reasonable one is a disputed issue of material fact as explained below.

proposed construction. The Defendants' construction is persuasive on two points in particular.

First, the manner in which the lots were conveyed and restricted together suggests the grantor intended for a dwelling, if any, to be limited to Lot 3. The Hennessey Deed designates Lot 72 as a lot that Lot 3 (which could have a single-family residence) could use to construct a garage ("A private garage, for use with said Lot Number Three (3) . . . ."). The deed specifically prohibits using the Lot 72 garage as a dwelling. This generates an inference that the grantor intended to limit any dwelling to Lot 3 and restrict Lot 72 to a garage lot. To read (c)'s prohibition on using the garage as a dwelling to only apply to garages would focus on the *structure* while ignoring intent to limit *uses* of structures on Lot 72. *See Bennett v. Tracy*, 1999 ME 165, ¶¶ 9-10, 740 A.2d 571 (rejecting party's argument that "only for the purpose of erecting one single family residence" could be read to allow commercial use).

Second, language employed elsewhere in the deed treats garages as requiring an affirmative grant. In restriction (b), the grantor specifically provided "[a] private garage may be erected however, upon said lot." To accept the Plaintiff's interpretation would assume the grantor intended to allow any structure or use, unless specifically prohibited. But if the grantor so intended, there would have been no need in (b) to affirmatively provide that Lot 3 could also be used to construct a garage. Under Plaintiff's interpretation such a structure would be allowed absent a specific prohibition. The court finds the Defendants' construction more persuasive on balance. Yet at the summary judgment stage and in light of the interpretive rules governing restrictive covenants, summary judgment must be denied.

Divining grantor intent is a challenging task. Here, as in many cases, the deed language is not clear. If in fact the grantor intended to unequivocally prohibit a residence on Lot 72 in a manner consistent with other language used in the deed, (c) should read: "No building, other than a private garage, for use with said Lot Number Three (3), may be erected upon said Lot Number Seventy-Two (72)." But instead, the grantor provided "[a] private garage, for use with said Lot Number Three (3), may be erected upon said Lot Number Seventy-Two (72) . . . ."

While not explicitly stated, the parties fundamentally disagree about whether *expressio unius est exclusio alterius* (the expression of one thing is the exclusion of the other) applies. For the Defendants, expression of the garage that cannot be used as a dwelling is the exclusion of another structure that could be used as a dwelling. Maine courts have yet to extend this maxim of statutory interpretation to construe deeds. *See, e.g., Whorff v. Johnson*, 143 Me. 198, 199, 58 A.2d 553, 554 (1948); *Bangor, O. & M. R. Co. v. Smith*, 47 Me. 34, 44 (1859). The rules governing interpretation of statutes versus deeds are quite different, particularly in the area of restrictive covenants.

Drawing all reasonable inferences in favor of the Plaintiff, constructing a residence on Lot 72 is not flatly inconsistent with the ambiguous language the grantor employed in the deed. *Cf. ALC Dev. Corp. v. Walker*, 2002 ME 11, ¶ 12, 787 A.2d 770 (interpreting construction of a roadway to be inconsistent with single family residential use restriction). There are two plausible constructions. This creates a conflict and thus an ambiguity.

The general rule holds that restrictive covenants are strictly construed. *Friedlander*, 485 A.2d at 972 ("Restrictive covenants ought not to be extended by

9

implication or enlarged by construction.") When faced with conflicting interpretations of a restrictive covenant, the court cannot chose, and in particular cannot adopt the more restrictive as a matter of law:

> Doubt will be resolved in favor of the unrestricted use of property, so that where the language of a restrictive covenant is capable of two constructions, the one that limits, rather than the one which extends it, should be adopted, and that construction should be embraced which least restricts the free use of the land.

*Naiman v. Bilodeau*, 225 A.2d 758, 759 (Me. 1967). The rule has since been invoked where the restriction is "reasonably and equally susceptible" to multiple possible interpretations. *Friedlander*, 485 A.2d at 972. When "reasonably and equally susceptible" to two or more interpretations, the less restrictive interpretation prevails. *Id.* But whether the competing interpretations in this case are in fact "reasonably and equally susceptible" to either plausible construction is a disputed issue of material fact that precludes summary judgment.

Both parties move for summary judgment, but the deed is neither unambiguous nor "reasonably and equally susceptible" of either interpretation as a matter of law. The cross-motions for summary judgment on this issue are therefore denied.

## C. Whether Defendants May Enforce the Restriction

The Plaintiff next contends that even if one accepts the Defendants' interpretation, they are not entitled to enforce the restriction.

The restriction clearly runs with the land and encumbers Lot 72. The Hennessey Deed states: "[t]he foregoing described and conveyed lots or parcels of land are conveyed subject to the various restrictions, *all of which shall run with the land.*" The court concludes the restriction unambiguously runs with the land and restricts Lot 72.

*Friedlander*, 485 A.2d 965, 967 (Me. 1984) (finding restriction intended to run with the land even in the absence of explicit language stating so in the deed).

The Plaintiff argues while the restriction applied to Lot 72 and ran with the land, the lots owned by the Defendants are not benefitted by the restriction and have no enforcement power. The Defendants' lots include Lots 76 (Fantini), 81 (Sullivan), and 96 (Naymie). The Plaintiff does not deny that the Defendants are successors in interest to the land retained by the grantor at the time of the Hennessey Deed, but argue the grantor did not intend to benefit their specific parcels. The Plaintiff essentially argues the Defendants' lots are too far from Lot 72 to have been intended to benefit from the restriction. (Pl.'s Mot. Summ. J. 14.)

The Plaintiff overstates the required showing; the Defendants need only demonstrate the grantor intended the restriction run with the land and that the grantor retained the benefitted land:

> When therefore it appears by the fair interpretation of the words of a grant that it was the intent of the parties to create or reserve a right, in the nature of a servitude or easement in the property granted, *for the benefit of other land owned by the grantor, and originally forming with the land conveyed one parcel, such right will be deemed appurtenant to the land of the grantor and binding on that conveyed to the grantee*, and the right and burden thus created will respectively pass to and be binding on all subsequent grantees of the respective lots of land.

*Herrick v. Marshall*, 66 Me. 435, 439 (1877) (emphasis added). Contrary to the Plaintiff's argument, the grantor's retained land is not dissected to discern which portion was intended to the benefit; the grantor's entire retained portion is presumed benefitted by the restriction and enforceable by successors. *See* Restatement (Third) of Property (Servitudes) § 8.1 (2000). As successors in interest to the areas of land benefitted by the

11

restrictions in the Hennessey Deed, two of the Defendants are entitled to enforce the restriction such that this case may proceed.[4]

### D. Reasonableness and Enforceability of the Restriction

The Plaintiff lastly argues the restriction is unreasonable and the Defendants have not met their burden to establish a court of equity should enforce the restriction on Lot 72. Defendants correctly respond that the Plaintiff has the burden to show the character of the neighborhood has changed to such an extent that enforcing the restriction would be unjust. *See Bates Mfg. Co. v. Franklin Co.*, 218 A.2d 366, 368 (Me. 1966). This showing has not been made in the summary judgment record and is therefore premature. Plaintiff is entitled to assert these arguments at a later stage.

### III. Conclusion

For the reasons set forth above, ambiguity in the restrictive covenant precludes summary judgment for either party. Merely because the deed is susceptible to more than one interpretation does not mean Plaintiff is entitled to the least restrictive interpretation as a matter of law. Rather, a disputed issue of material fact remains as to whether the deed restriction is "reasonably and equally susceptible" to either interpretation. Defendants Sullivan and Naymie are entitled to enforce the restriction; the Fantinis' right was extinguished by merger and therefore they have no standing and must be dismissed from the case.

---

[4] Defendants concede that by virtue of Oscar Olson holding Lots 72 and 76 simultanously, the benefit of the restriction held by the Fantinis was extinguished by merger. The Defendants are unable to point to any affirmative evidence that would be admissible at trial that Olson intended to revive the restriction after he conveyed Lot 76.

12

The entry shall be:

The Plaintiff's motion for summary judgment is GRANTED only as to the Fantinis, who lack standing to enforce the restriction; in all other respects, the Plaintiff's motion for summary judgment is DENIED. The Defendants' motion for summary judgment is DENIED.

SO ORDERED.

DATE: June ___, 2015

_____
John O'Neil, Jr.
Justice, Superior Court

RE-14-78

ATTORNEY FOR PLAINTIFF:
DAVID J JONES
JENSEN BAIRD ET AL
11 MAIN STREET SUITE 4
KENNEBUNK ME  04043


ATTORNEYS FOR DEFENDANTS JESSICA A & NEIL F SULLIVAN:
CHRISTOPHER PAZAR
NATHANIEL R HUCKEL BAUER
MICHAEL DEVINE
DRUMMOND & DRUMMOND
ONE MONUMENT WAY
PORTLAND ME  04101


PRO SE
THELMA G NAYMIE PR
9 BROOKFIELD STREET
ROSLINGDALE MA 02131

CHARLENE F PASTORE
11 FREEDOM WAY
WALPOLE MA  02081

THOMAS S NAYMIE
10 SPRING LANE
WESTWOOD MA  02090