STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-2021-15

DENNIS COYNE and
ELIZAVETA RAGULIN
COYNE,

Plaintiffs,

v.

TOWN OF BRUNSWICK,

Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)

DECISION AND ORDER

REC'D CUMB CLERKS OFC
NOV 4 '21 PM12:56

Before the Court is Plaintiffs Dennis Coyne and Elizaveta Ragulin Coyne's ("the Coynes") appeal filed pursuant to M.R. Civ. P. 80B. The Coynes appeal the denial of their mooring assignment application by the Rivers and Coastal Commission ("the Commission") of Defendant Town of Brunswick ("the Town"). For the following reasons, the Commission's decision is affirmed and the Coynes' appeal is denied.

I.      Background

In August 2020, the Coynes purchased a single-family home located at Lot 8, Williams Island, West Bath ("the Camp"), from The David S. White Living Trust, the Joanne W. White Living Trust, Cynthia Brown, and Andrew White (collectively, "the Whites"). (R. 3, 42.) The Camp is accessible only by boat. (R. 42.) The Camp is benefited by an easement appurtenant across 39 Four Wheel Drive, Brunswick, Maine ("the Easement"). (R. 3, 42.) 39 Four Wheel Drive[1] is a buildable lot with more than one hundred feet of shore frontage. (R. 3, 28-29, 42.)

---

[1] Throughout its decision, the Commission erroneously refers to the servient estate as 38 Four Wheel Drive, when it is, in fact, 39 Four Wheel Drive. The Commission's error is merely a scrivener's error, as acknowledged by counsel for the Town. (*See* Pls.' Br. at 2, n.2.)

The Easement was initially granted by Richard D. Ryder to Robert S. and Lorraine Damerjian by deed dated May 13, 1986, and recorded July 15, 1986. (R. 21-27, 42.) The Easement is described as "[a] strip of land fifteen (15) feet in width" running "to the shore of the New Meadows River," and conveys "the right to pass over said right of way and easement with pedestrian and vehicular traffic (but not with trucks larger than pickup trucks) for the sole purpose of ingress and egress to and from the Damerjian single family cottage property of Damerjian and the parking of vehicles . . . ." (R. 21-22, 42-43.) The Easement also entitles the grantee to park one boat trailer and one boat at 39 Four Wheel Drive. (R. 22.)

The Whites obtained an assignment for a mooring off of 39 Four Wheel Drive in 2007, and maintained the registration through 2019. (R. 42.) The Whites did not use the mooring for commercial purposes. (R. 44.) On April 14, 2021, the Coynes applied to the Town of Brunswick Harbor Master, Dan Sylvain, for a mooring assignment. (R. 43.) On April 26, 2021, Town Clerk Fran Smith issued a decision on behalf of the Harbor Master, denying the Coynes' application on the basis that the Coynes did not have the requisite shore rights to be eligible for a mooring under Section 11-4(a) of the Town Municipal Code of Ordinances ("the Code").[2] (R. 43.)

The Coynes timely appealed the April 26, 2021 decision of the Harbor Master to the Commission. (R. 41.) The Commission heard the appeal *de novo* at its May 26, 2021

---

[2] Section 11-4(a) of the Town's Municipal Code of Ordinances ("the Code") provides:
> Mooring assignments. Mooring privileges in the Town of Brunswick shall be assigned pursuant to 38 M.R.S.A. §§ 3 and 11. Consequently, mooring assignments are available to individuals who are the owners or masters of a watercraft and who own shore rights to a parcel of land, which is defined as a lot that satisfies applicable minimal buildable lot size requirements and includes at least one hundred (100) feet of shoreline frontage. Notwithstanding the foregoing, mooring assignments are also available to individuals who, prior to January 1, 1987, owned shore rights of at least one hundred (100) feet of frontage regardless of the size of the lot. Only one (1) mooring may be assigned to any shorefront parcel of land under this privilege.

meeting. (R. 41.) Mr. Coyne and Harbor Master Sylvain presented testimony, exhibits, and arguments at the hearing. (R. 41.) The Commission voted unanimously to affirm the decision of the Harbor Master. (R. 41-45.) The Commission issued its written "Findings of Facts and Conclusion of Law/Notice of Decision" on June 23, 2021. (R. 41-45.)

On appeal, the Coynes argue that the Commission erred because (1) the Coynes have sufficient shore rights under the Easement to be entitled to a mooring, or (2) in the alternative, the Whites' mooring privileges were grandfathered under Section 11-4(b) of the Code and properly transferred to the Coynes.

## II.     80B Appeal Standard

The Superior Court's jurisdiction to hear Rule 80B appeals is a function of statute. M.R. Civ. P. 80B(a); *Norris Family Assocs., LLC v. Town of Phippsburg,* 2005 ME 102, ¶ 13, 879 A.2d 1007. The court reviews decisions of a board for errors of law, abuse of discretion, or findings not supported by substantial evidence in the record. *Aydelott v. City of Portland,* 2010 ME 25, ¶ 10, 990 A.2d 1024. "Substantial evidence is evidence that a reasonable mind would accept as sufficient to support a conclusion." *Toomey v. Town of Frye Island,* 2008 ME 44, ¶ 12, 943 A.2d 563 (quoting *Sproul v. Town of Boothbay Harbor,* 2000 ME 30, ¶ 8, 746 A.2d 368). The court may not substitute its judgment for that of the Board. *Tarason v. Town of South Berwick,* 2005 ME 30, ¶ 6, 868 A.2d 230. Petitioners bear the burden "of showing that the record evidence compels a contrary conclusion." *Id.*

The interpretation of a local ordinance is a question of law, which the court reviews *de novo. Priestly v. Town of Hermon,* 2003 ME 9, ¶ 7, 814 A.2d 995. When interpreting an ordinance, the court first looks at "the plain meaning of its language," and if the ordinance is clear, the court need not look beyond the language. *21 Seabran, LLC v. Town of Naples,* 2017 ME 3, ¶ 12, 153 A.3d 113.

## III.  Discussion

### A. Construction of the Easement

"The first step in any analysis of the language in a deed is to give words their general and ordinary meaning to see if they create any ambiguity." *Gravison v. Fisher*, 2016 ME 35, ¶ 39, 134 A.3d 857 (quoting *Green v. Lawrence*, 2005 ME 90, ¶ 7, 877 A.2d 1079). "The court may consider extrinsic evidence in determining the parties' intent only if the deed's language is ambiguous." *Id.* The construction of language creating an easement is generally a question of law that the court reviews *de novo*. *Testa's, Inc. v. Coopersmith*, 2014 ME 137, ¶ 11, 105 A.3d 1037. However, if the language of an easement is ambiguous, its interpretation is a question of fact. *Id.*; *see Tomasino v. Town of Casco*, 2020 ME 96, ¶ 7, 237 A.3d 175.

The Easement is described as "[a] strip of land fifteen (15) feet in width" running "to the shore of the New Meadows River," and conveys "the right to pass over said right of way and easement with pedestrian and vehicular traffic (but not with trucks larger than pickup trucks) for the sole purpose of ingress and egress to and from the Damerjian single family cottage property of Damerjian and the parking of vehicles . . . ." The Easement also entitles the grantee to park one boat trailer and one boat at the servient estate.

The Town argues that the scope of the Easement does not include "shore rights," as that term is used in the Code.[3] While the Easement may not include the phrase "shore rights," the Easement unambiguously conveys the right to pass over the Easement and access the shore for the purpose of reaching the Camp. Moreover, the Easement mentions a boat and boat trailer as being among the vehicles that may pass over or park on the

---

[3] The term is not defined in the Code, and the Town does not propose a definition for the Court to consider.

property. Therefore, the language of the Easement evidences the parties' intention to permit the grantees to use the shore, at the very least, to launch a boat. The Coynes, therefore, have nonexclusive "shore rights" to the fifteen feet of shore frontage encompassed by the Easement.

### B. Eligibility for Mooring Assignment

#### i. Eligibility under Section 11-4(a) of the Code

Section 11-4(a) of the Town's Municipal Code of Ordinances ("the Code") provides:

> Mooring privileges in the Town of Brunswick shall be assigned pursuant to 38 M.R.S.A. §§ 3 and 11. Consequently, mooring assignments are available to individuals who are the owners or masters of a watercraft and who own shore rights to a parcel of land, which is defined as a lot that satisfies applicable minimal buildable lot size requirements and includes at least one hundred (100) feet of shoreline frontage.

Similarly, 38 M.R.S. § 3 (2021) provides: "Whenever practicable, the harbor master shall assign mooring privileges in those waters where individuals own the shore rights to a parcel of land, are masters or owners of a boat or vessel and are complainants . . . ." In turn, 38 M.R.S. § 11 defines "parcel of land" as "the larger of the minimal buildable lot size in the municipality or 20,000 square feet and, in either case, including 100 feet of shoreline frontage."

As discussed above, the Coynes have nonexclusive shore rights to fifteen feet of shore frontage. The Coynes argue that they are eligible for a mooring because the servient parcel that the Easement burdens has more than one hundred feet of shore frontage in total. The Town argues that the Code limits eligibility for mooring assignments to those who have shore rights to at least one hundred feet of shore frontage.

The Court agrees with the Town's interpretation based on the plain meaning of the Code and 38 M.R.S. § 3. Neither Section 11-4(a) nor 38 M.R.S. § 3 are ambiguous as

to the minimum number of feet of shore frontage to which an applicant must have shore rights. The requirement that a mooring applicant own "shore rights to a parcel of land ... [that] includes at least one hundred (100) feet of shoreline frontage" cannot be satisfied by an easement to access only fifteen feet of shore, regardless of the total shore frontage of the servient estate. Thus, the Coynes are not eligible for a mooring assignment under Section 11-4(a).

### ii. Grandfathering under Section 11-4(b) of the Code

Next, the Coynes argue that the Whites' 2007 mooring assignment is "grandfathered" under Section 11-4(b) of the Code because the assignment predated the effective date of the Code and its amendment. Section 11-4(b) provides: "[M]ooring privileges in lawful existence on the effective date of the ordinance from which this article was derived shall be preserved."

However, even if the Whites' mooring privileges were grandfathered, those privileges cannot be transferred to the Coynes under the Code. Section 11-4(c) of the Code, which expressly incorporates 38 M.R.S. § 3-A, provides: "[M]ooring assignments may not be transferred unless the mooring is used for commercial fishing purposes. . . ." The mooring was used by the Whites for recreational purposes. Thus, the mooring assignment may not be transferred even if the Whites' privileges were grandfathered.

The Commission, therefore, correctly evaluated the Coynes' application for a mooring assignment as a new registration. As discussed above, the Commission did not err in its decision that the Coynes were not eligible for a new mooring assignment.

### IV. Conclusion

For the foregoing reasons, the Court concludes that the Commission's decision to deny the Coynes' mooring application is supported by substantial record evidence and does not constitute an error of law. Accordingly, the Court denies the Coynes' appeal.

The entry is:

    1. The decision of the Commission upholding the denial of Plaintiffs' application for a mooring assignment is AFFIRMED.

    2. Plaintiffs' Rule 80B appeal is DENIED.


The Clerk is directed to incorporate this Decision and Order into the docket by reference pursuant to Maine Rule of Civil Procedure 79(a).

Dated: ___11/03/2021___

_____
MaryGay Kennedy, Justice
Maine Superior Court

Entered on the Docket: 11/05/2021